Carlos R. ZAYAS, Petra Escudero De Zayas, the Conjugal Partnership Composed by them, Jose Zayas Escudero, Mayra Zayas Escudero, Kelly Zayas Escudero, Juan Carlos Zayas Escudero, and Petrie Zayas Escudero, Plaintiffs,

v.

VETERANS ADMINISTRATION, Myrna M. Pagan and John Doe, and their conjugal partnership, Barbara P. Gerber and John Doe 2, and their conjugal partnership, P.M. Fletcher and John Doe 3, and their conjugal partnership, Martiza R. Anaya and John Doe 4, and their conjugal partnership, M. Gonzalez and Jane Doe, and their conjugal partnership, Charles Freeman and Jane Doe 2, and their conjugal partnership, Herbert B. Mars and Jane Doe 3, and their conjugal partnership, Jose G. Lopez and Jane Doe 4, and their conjugal partnership, John Roe, Jane Roe, Defendants.

Civ. No. 85–1121 (JAF).

United States District Court,
D. Puerto Rico.

Aug. 14, 1987.

John M. García, San Juan, P.R., for plaintiffs.

Francisco A. Besosa, Asst. U.S. Atty., and Daniel F. López Romo, U.S. Atty., San Juan, P.R., for defendants.

## OPINION AND ORDER

FUSTE, District Judge.

Carlos R. Zayas, an honorably-discharged veteran of the United States Army, filed this action, along with his wife and children, against several officers of the Veterans Administration in their personal capacity, for alleged violation of his constitutional rights.[1] Jurisdiction is pleaded under 28 U.S.C. sec. 1331 and *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). The case stands submitted on cross-motions for summary judgment. There is no genuine issue as to material facts, making Fed.R.Civ.P. 56 the proper procedural vehicle for the disposition of this controversy. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The parties entered into a judicially-approved stipulation of facts which is contained in a court's order dated November 1, 1985, docket document No. 16. Veteran

---

1. We read the file as naming the following defendants: Myrna M. Pagán, a medical rating specialist at the Veterans Administration; Barbara P. Gerber, a legal and occupational rating specialist at the Veterans Administration; P.M. Fletcher, whose first name is presently unknown, a legal and occupational rating specialist at the Veterans Administration; Maritza M. Anaya, an adjudication officer at the Veterans Administration; M. González, whose first name is presently unknown, a legal and occupational rating specialist at the Veterans Administration; Charles Freeman, a medical center director of the Veterans Administration; José G. López, a veterans' service officer at the Veterans Administration; Herbert B. mars, acting director of compensation and pension service of the Veterans Administration; John Roe and Jane Roe, fictitious names pertaining to other officers or employees of the Veterans Administration, who took part in the events, as well as the spouses of the named defendants.

Zayas was discharged from the United States Army in May 1960, by reason of a psychiatric disability. He had entered the service on September 10, 1950 and advanced rapidly to SFC in less than three years. *See* Clinical Record, Narrative Summary, issued by the Medical Hold Det. Fitzimons on March 10, 1960, docket document No. 21, Exhibit No. 14. On July 28, 1960, he was rated by the Veterans Administration (VA) as having a 30% disability for a service-connected condition. Zayas was then described as totally and permanently incapacitated for further military service and medically unfit for retention on active duty because of his paranoid condition.

After his discharge from service, he was awarded veteran's disability compensation. On October 29, 1969, the VA increased Mr. Zayas' disability rating to 100%, retroactive to February 5, 1956, with a final diagnosis of non-differentiated schizophrenic reaction-paranoid type. Zayas was held incompetent to handle funds. *See* docket document No. 21, Exh. B. His wife, Petra Escudero, received the payments in a fiduciary capacity.

At the beginning of the year 1983, the Veterans Administration cited veteran Zayas for a medical/psychiatric examination. There seems to be no specific motivating reason for such request, inasmuch as no reasons were advanced to Zayas and his wife Petra Escudero for said request. Documents on file show that Mrs. Escudero had little or no control over her husband's acts. Zayas reacted adversely to the proposed exam.[2] In fact, he failed to report to the examinations set for May 20, 1983 and June 27, 1983.

On July 18, 1983, the VA wrote to Mrs. Escudero cautioning that Mr. Zayas' failure to report for examination would result in discontinuance or reduction of benefits. A third medical examination was scheduled for September 22, 1983. Obviously, for the reasons already mentioned, Mr. Zayas failed to appear. On November 11, 1983, Mildred González, a veteran's claim examiner at the VA Regional Office in San Juan, Puerto Rico, issued a rating decision suspending Mr. Zayas' benefits for failure to report to the exam. This action was taken under the provisions of 38 C.F.R. sec. 655 (1975). Three months later, on January 31, 1984, a VA Rating Board composed by a Ms. González, Barbara P. Gerber, and Myrna M. Pagán, M.D., modified Ms. González' previous suspension and established Mr. Zayas' disability at 30%, retroactive to November 1, 1983.[3] Although not clear, there is some evidence that a third party contacted the Veterans Administration to inform of the fact that Zayas' failure to comply with appointments was caused by his mental disease. As a result thereof, in April 1984 he was examined by a VA doctor at the offices of Zayas' private psychiatrist. Based on this examination, a VA Rating Board, this time composed by Dr. Pagán, Ms. Gerber, and Pauline Fletcher, issued a decision confirming Mr. Zayas' 30% disability rating. Both rating actions were taken at the VA's San Juan Regional Office by their personnel.

It is undisputed that Zayas' predicament came about and materialized as a result of a Congressional investigation that focused over the fact that veterans residing in Puerto Rico enjoying 100% neuropsychiatric disability more than doubled the percentage of the same veteran population stateside. These statistics created Congressional concern about the administration of VA programs in Puerto Rico. *See* Report of Special Audit, Veterans Administration Medical and Regional Office Center, S.J. Office of Inspector General, Rept. No. 3R2–A05–043, Feb. 22, 1983, docket doc-

---

**2.** The file reflects a series of letter-motions written by Mr. Zayas where he initially alleged to be receiving acceptable medical treatment, therefore not requiring that the VA examine him. Afterwards, the letter-motions stated that he thought that his wife had requested the exam and wanted the VA to know that (a) she swore that she had not, or (b) if *she* had requested the test, "they should not pay attention to her because she was crazy."

**3.** Because Zayas was rated at least 30% disabled for over twenty years, his 30% rating was protected by 38 U.S.C. sec. 110 and 38 C.F.R. sec. 3.951, and continued pursuant to 38 C.F.R. sec. 3.655(b), despite his failure to report.

ument No. 21, Exh. 12. *See also Com. of Puerto Rico by Hernández Colón v. Walters,* 660 F.Supp. 1230 (D.P.R.1987). It calls our attention that on September 11, 1986, the VA's rating board, *sua sponte,* revised plaintiff's disability, increasing the percentage to 70%. There, it is stated that Zayas failed to attend an additional appointment for psychiatric examination, so they (VA) recurred to a social and industrial field survey.[4] As a result of the social worker's visit to Zayas' home, they were able to confirm that Zayas indeed is sick and paranoid:

> [w]hen the social worker first visited veteran's home, [she] precipitated a crisis and the veteran blamed his wife for the presence of the social worker and accused her of doing things against his best interests. A few days after veteran became violent, threw her out of the house and the couple ended up separating and filing for divorce.

Rating decision, Sept. 11, 1986, p. 2, docket document No. 43.

## I.

■ We first decide whether this suit is permissible under 38 U.S.C. sec. 211(a). Section 211(a) reads:

> [T]he decisions of the Administrator or any question of law or fact concerning a claim for benefits or payments under any law administered by the Veterans Administration shall be final and conclusive and no other official or any court of the United States shall have power or jurisdiction to review any such decision.

This provision has been interpreted as referring strictly to administrative procedures where the VA is applying the law. An exception has been recognized to allow suits involving constitutional challenges to practices of the VA. *See Johnson v. Robison,* 415 U.S. 361, 94 S.Ct. 1160, 39 L.Ed.2d 389 (1974); *Johnson v. United States,* 749 F.2d 1530, 1533 (11th Cir.1985); *Anderson v. Veterans Administration,* 559 F.2d 935,

936 (5th Cir.1977). The circuits are divided between liberal and restrictive reading of *Johnson v. Robison.* The First Circuit has not adopted a position on this issue. However, it has indicated that they are inclined to follow the Second Circuit and the Federal Circuit. *See Paluca v. Secretary of Labor,* 813 F.2d 524 (1st Cir.1987), *citing with approval Roberts v. Walters,* 792 F.2d 1109 (Fed.Cir.1986); *Traynor v. Walters,* 791 F.2d 226 (2d Cir.1986). These cases have expressed that the "clear and convincing evidence" of Congressional intent in enacting section 211(a) was to completely bar judicial review of veterans' benefit claims. *Traynor,* 791 F.2d at 229. The *Johnson v. Robison* holding, recognizing the right to sue under certain circumstances, is not an exception to the rule, but rather a uniform interpretation of the same in the sense that it allows for a constitutional review of the veterans' benefit *regulations* and not of its procedural application. *See Davis v. Veterans Administration,* 792 F.2d 1111 (Fed.Cir.1986).

Therefore, our review in this case is limited to whether VA's regulation, 38 C.F.R. 3.655, is constitutional and whether the defendants correctly applied the same.[5] Recently, it has been established that allegations of procedural due process violations in reducing pension benefits state a claim of unconstitutional deprivation of a property interest actionable under the United States Constitution. *See Tyson Mathes v. Hornbarger,* 821 F.2d 439 (7th Cir.1987); *Winslow v. Walters,* 815 F.2d 1114 (7th Cir.1987).

In the instant case, we are confronted with a constructive denial of a hearing prior to having a property right taken away, as in *Winslow.* The issue here is whether the VA, it being obvious from the records it had before them that plaintiff Carlos Zayas was mentally disabled, could call him in for a hearing or examination and *automatically* reduce the benefits if the mentally-sick veteran failed to comply. The file extensively reflects on the fact that the VA had

---

**4.** We find no new evidence that would justify the revision and increase in benefits, other than an implied admission that VA jumped the gun in dealing with Zayas.

**5.** *See Walters v. National Ass'n of Radiation Survivors,* 473 U.S. 305, 105 S.Ct. 3180 n. 3, 87 L.Ed.2d 220 (1985) (district courts have jurisdiction to entertain constitutional attacks on the operation of the claims systems).

available other mechanisms to reevaluate a 100% mentally-disabled veteran. As a matter of fact, they did reevaluate him through other means in 1986 as already stated.

A lawsuit making a procedural claim does not challenge "[t]he interpretation or application of a particular provision to a particular set of facts." *Johnson v. Robison*, 415 U.S. at 367, 94 S.Ct. at 1166. A suit challenging the constitutionality of the VA's procedures [6] presents a question of law that arises under the Constitution. *Winslow*, 815 F.2d at 1117.

### II.

▆▆▆ Applying the above-quoted principles to this case, we see that in November 1983, the VA asked Carlos Zayas to submit himself to a medical examination, which he failed to do. Furthermore, on December 8, 1983, his benefits were automatically suspended. On January 31, 1984, his benefits were reinstated at a 30% disability rate, with a retroactive effective date of November 1, 1983. On August 2, 1985, after a psychiatric examination showed that plaintiff suffered from chronic schizophrenia, the VA confirmed its 30% disability rating. Afterwards, plaintiff was notified that the VA had found him competent as per adjudication signed by defendant officer M.R. Arroyo, therefore, disqualifying his wife as administrator and custodian of his funds. This erratic pattern of dispositions afforded the veteran no hearing as required by 38 C.F.R. sec. 655, which unequivocally states that actions affecting benefits can only be taken against a veteran who has failed to report to medical examination only if the veteran fails to establish adequate reasons for the noncompliance. The concept of "without adequate reason" embodied in the regulations clearly has embedded the right of the veteran to explain or to show cause for his failure to attend. This implies the right to a hearing. Due process safeguards were violated in this case, since the VA acted arbitrarily and did not follow the constitutional requirements which bind all government agencies. 38 U.S.C. sec. 211(a) does not eliminate this procedural mecha-

nism. *Hanke by Hanke v. Walters*, 740 F.2d 654 (8th Cir.1984); *see Evergreen State College v. Cleland*, 621 F.2d 1002, 1008 (9th Cir.1980).

### III.

▆▆▆ Our finding of a constitutional violation does not warrant our intervention with the percentage of disability. The VA has reinstated Zayas' benefits to 70% retroactive to 1983. Any intervention with this finding would be in violation of 38 U.S.C. sec. 211. *See Pappanikoloaou v. Administrator of Vet. Adm'n*, 762 F.2d 8, 9 (2d Cir.), *cert. denied*, 474 U.S. 851, 106 S.Ct. 150, 88 L.Ed.2d 124 (1985); *Kirkhuff v. Nimmo*, 683 F.2d 544 (D.C.Cir.1982); *Cabiya San Miguel v. United States Veterans Adm'r*, 592 F.Supp. 21 (D.P.R.1984), *aff'd*, 774 F.2d 1148 (1st Cir.1985); *Osorio v. Veterans Administration*, 514 F.Supp. 94, 95 (D.P.R.1981), *aff'd*, 676 F.2d 681 (1st Cir.1982). Accordingly, we enter declaratory judgment confirming the constitutionality of regulation 38 C.F.R. 3.655, only if the VA affords the veteran an opportunity to explain a failure to attend an appointment under 38 C.F.R. 3.329 before reducing benefits. The automatic reduction without a prior hearing would violate due process. Since the constitutional violation is to an abstract right (this court cannot intervene in benefit decisions), no damages shall be assessed. *See Memphis Community School Dist. v. Stachura*, 477 U.S. 299, 106 S.Ct. 2537, 91 L.Ed.2d 249 (1986) (constitutional violations call for money awards only to compensate injuries apart from the constitutional violation *per se*); *Carey v. Piphus*, 435 U.S. 247, 253, 98 S.Ct. 1042, 1046, 55 L.Ed.2d 252 (1978).

This, however, does not impede this court from further declaring that the Veterans Administration acted in an irresponsible manner in dealing with Zayas' case. It does not take much brilliance to realize that the most tragic of diseases are those that affect the human mind. It was patently obvious from Zayas' record that he was schizophrenic and paranoid. His failure to submit himself to follow-up physical

---

**6.** The VA benefits are more akin to Social Security benefits rather than to welfare benefits, i.e., applicable is *Mathews v. Eldridge*, 424 U.S.

319, 349, 96 S.Ct. 893, 909, 47 L.Ed.2d 18 (1976). *See Walters v. National Ass'n*, 105 S.Ct. at 3195.

or psychiatric examinations had an obvious explanation. Although we do not order the Veterans Administration to do so (at this junction the court is legally impeded from so doing), Zayas' case should be examined once again to determine if as of today he is enjoying the benefits to which he is entitled. The agency should be made aware that there is always more than one way of skinning a cat and that federal courts will exercise their power within the broad boundaries of law to avoid potential abusive situations like the one now before us.

IT IS SO ORDERED.

## JUDGMENT

Based on this court's opinion and order entered today, we declare regulation 38 C.F.R. 3.655 constitutional only if the affected veteran is afforded an opportunity to be heard before benefit decisions are taken. In this particular case, we find an abstract violation to plaintiff's civil rights because of the failure on the part of the Veterans Administration to afford such hearing as required. In the context of this case, the violation is an abstract one, where no damages will be assessed.

IT IS SO ORDERED.