HARRIS, SECRETARY OF HEALTH AND HUMAN
SERVICES *v.* ROSARIO ET AL.

No. 79–1294.   Decided May 27, 1980

PER CURIAM.

The Aid to Families with Dependent Children program
(AFDC), 49 Stat. 627, as amended, 42 U. S. C. § 601 *et seq.,*
provides federal financial assistance to States and Territories
to aid families with needy dependent children.   Puerto Rico
receives less assistance than do the States, 42 U. S. C. §§ 1308
(a)(1), 1396d (b)  (1976 ed. and Supp. II).   Appellees,
AFDC recipients residing in Puerto Rico, filed this class
action against the Secretary of Health, Education, and Wel-
fare (now the Secretary of Health and Human Services) in
March 1977 in the United States District Court for the
District of Puerto Rico; they challenged the constitutionality
of 42 U. S. C. §§ 1308 and 1396d (b), claiming successfully
that the lower level of AFDC reimbursement provided to
Puerto Rico violates the Fifth Amendment's equal protection
guarantee.

We disagree.   Congress, which is empowered under the
Territory Clause of the Constitution, U. S. Const., Art. IV,
§ 3, cl. 2, to "make all needful Rules and Regulations respect-
ing the Territory . . . belonging to the United States," may
treat Puerto Rico differently from States so long as there is a

rational basis for its actions. In *Califano* v. *Torres*, 435 U. S. 1 (1978) (*per curiam*), we concluded that a similar statutory classification was rationally grounded on three factors: Puerto Rican residents do not contribute to the federal treasury; the cost of treating Puerto Rico as a State under the statute would be high; and greater benefits could disrupt the Puerto Rican economy. These same considerations are forwarded here in support of §§ 1308 and 1396d (b), Juris. Statement 12–14,* and we see no reason to depart from our conclusion in *Torres* that they suffice to form a rational basis for the challenged statutory classification.

We reverse.

*So ordered.*

MR. JUSTICE BRENNAN and MR. JUSTICE BLACKMUN, not now being persuaded that the Court's summary disposition in *Califano* v. *Torres*, 435 U. S. 1 (1978), so clearly controls this case, would note probable jurisdiction and set the case for oral argument.

MR. JUSTICE MARSHALL, dissenting.

The Court today rushes to resolve important legal issues without full briefing or oral argument. The sole authority cited for the majority's result is another summary decision by this Court. The need for such haste is unclear. The dangers of such decisionmaking are clear, however, as the Court's analysis is, in my view, ill-conceived in at least two respects.

The first question that merits plenary attention is whether Congress, acting pursuant to the Territory Clause of the Constitution, U. S. Const., Art. IV, § 3, cl. 2, "may treat Puerto

---

*For example, the Secretary estimates that the additional cost of treating Puerto Rico as a State for AFDC purposes alone would be approximately $30 million per year, and, if the decision below were to apply equally to various other reimbursement programs under the Social Security Act, the total annual cost could exceed $240 million. Juris. Statement 12, n. 13.

Rico differently from States so long as there is a rational basis for its actions." *Ante,* at 651–652. No authority is cited for this proposition. Our prior decisions do not support such a broad statement.

It is important to remember at the outset that Puerto Ricans are United States citizens, see 8 U. S. C. § 1402, and that different treatment to Puerto Rico under AFDC may well affect the benefits paid to these citizens.[1] While some early opinions of this Court suggested that various protections of the Constitution do not apply to Puerto Rico, see, *e. g., Downes* v. *Bidwell,* 182 U. S. 244 (1901); *Balzac* v. *Porto Rico,* 258 U. S. 298 (1922), the present validity of those decisions is questionable. See *Torres* v. *Puerto Rico,* 442 U. S. 465, 475–476 (1979) (BRENNAN, J., concurring in judgment). We have already held that Puerto Rico is subject to the Due Process Clause of either the Fifth or Fourteenth Amendment, *Calero-Toledo* v. *Pearson Yacht Leasing Co.,* 416 U. S. 663, 668–669, n. 5 (1974), and the equal protection guarantee of either the Fifth or the Fourteenth Amendment, *Examining Board* v. *Flores de Otero,* 426 U. S. 572, 599–601 (1976). The Fourth Amendment is also fully applicable to Puerto Rico, either directly or by operation of the Fourteenth Amendment, *Torres* v. *Puerto Rico, supra,* at 471. At least four Members of this Court are of the view that all provisions

---

[1] The District Court certified the plaintiff class as "all United States citizens residing in the Commonwealth of Puerto Rico, which [*sic*] are recipients of public assistance under the Aid to the Families with Dependent Children category and that have been, are and will be discriminated [against] solely on the basis of their residence." App. to Juris. Statement 2a.

It is unclear whether the Court's Territory Clause analysis is intended to apply only where the discrimination is against the Government of Puerto Rico and not against persons residing there. Such a distinction would lack substance in any event. The discrimination against Puerto Rico under the AFDC program must also operate as a discrimination against United States citizens residing in Puerto Rico who would benefit, one way or another, from such increased federal aid to Puerto Rico.

of the Bill of Rights apply to Puerto Rico. 442 U. S., at 475–476 (BRENNAN, J., joined by STEWART, MARSHALL, and BLACKMUN, JJ., concurring in judgment).

Despite these precedents, the Court suggests today, without benefit of briefing or argument, that Congress needs only a rational basis to support less beneficial treatment for Puerto Rico, and the citizens residing there, than is provided to the States and citizens residing in the States. Heightened scrutiny under the equal protection component of the Fifth Amendment, the Court concludes, is simply unavailable to protect Puerto Rico or the citizens who reside there from discriminatory legislation, as long as Congress acts pursuant to the Territory Clause. Such a proposition surely warrants the full attention of this Court before it is made part of our constitutional jurisprudence.

*Califano* v. *Torres,* 435 U. S. 1 (1978) (*per curiam*), the only authority upon which the majority relies, does not stand for the proposition the Court espouses today. In that decision, also reached through summary procedures and over the objections of two Members of the Court, see *id.,* at 5 (statement of BRENNAN, J.; statement of MARSHALL, J.), the Court held that the right to travel was not violated by a provision of the Social Security Act pursuant to which persons residing in the United States lost their supplemental security income benefits upon moving to Puerto Rico. While the plaintiffs in that case had also challenged the provision on equal protection grounds, the District Court relied entirely on the right to travel,[2] and therefore no equal protection

---

[2] The District Court concluded that "[w]e are not here concerned with the alleged power of Congress to establish disparate treatment towards the United States citizens who reside in Puerto Rico. Rather, the focus of our attention should be directed to determining whether a constitutional right of a citizen of the United States has been improperly penalized while he is within one of these States. We see this as the more relevant framing of the issues because although Plaintiff lost his benefits while physically in Puerto Rico, the statutory prohibitions that permitted this result came into play from the very moment when they exerted their force

question was before this Court.[3]  The Court merely referred
to the equal protection claim briefly in a footnote, *id.*, at 3,
n. 4.  Observing that Puerto Rico's relationship with the
United States was unique, the Court simply noted that the
District Court had "apparently acknowledged that Congress
has the power to treat Puerto Rico differently, and that every
federal program does not have to be extended to it."  *Ibid.*[4]
That Puerto Rico has an unparalleled relationship with the
United States does not lead ineluctably to the legal principle
asserted here.  At most, reading more into that single foot-
note of dictum than it deserves, *Califano* v. *Torres* may sug-
gest that under the equal protection component of the Due
Process Clause of the Fifth Amendment, Puerto Rico may be
treated differently from the States if there is a rational basis
for the discrimination when Congress enacts a law providing
for governmental payments of monetary benefits.  See *id.*, at 5.
That is a more limited view than is asserted in this case, but
even that position should be reached only after oral argu-
ment and full briefing.  *Ibid.* (statement of MARSHALL, J.).

I also object to the Court's reliance on the effect greater
benefits could have on the Puerto Rican economy.  *Ante,* at
652.  See also *Califano* v. *Torres, supra*, at 5, n. 7.  This ra-
tionale has troubling overtones.  It suggests that programs
designed to help the poor should be less fully applied in those
areas where the need may be the greatest, simply because

---

upon Plaintiff.  From this standpoint, Plaintiff is in the same position
now as if he would have remained in Connecticut and brought a declara-
tory judgment suit there. . . ."  *Torres* v. *Mathews*, 426 F. Supp. 1106,
1110 (1977) (emphasis deleted).

[3] The question presented in *Califano* v. *Torres* was whether the sections
of the Social Security Act excluding residents of Puerto Rico from the
Supplemental Security Income program "deny due process to individuals
who upon moving to Puerto Rico lose the benefits to which they were
entitled while residing in the United States."  Juris. Statement, O. T.
1977, No. 77–88, p. 2.  See also *id.*, at 9–11.

[4] The accuracy of this assessment of the District Court's opinion is open
to question.  See n. 2, *supra.*

otherwise the relative poverty of recipients compared to other persons in the same geographic area will somehow be upset. Similarly, reliance on the fear of disrupting the Puerto Rican economy implies that Congress intended to preserve or even strengthen the comparative economic position of the States vis-à-vis Puerto Rico. Under this theory, those geographic units of the country which have the strongest economies presumably would get the most financial aid from the Federal Government since those units would be the least likely to be "disrupted." Such an approach to a financial assistance program is not so clearly rational as the Court suggests, and there is no citation by the Court to any suggestion in the legislative history that Congress had these economic concerns in mind when it passed the portion of the AFDC program presently being challenged. Nor does appellant refer to any evidence in the record supporting the notion that such a speculative fear of economic disruption is warranted.[5] In my view it is by no means clear that the discrimination at issue here could survive scrutiny under even a deferential equal protection standard.

Ultimately this case raises the serious issue of the relationship of Puerto Rico, and the United States citizens who reside there, to the Constitution. An issue of this magnitude deserves far more careful attention than it has received in *Califano* v. *Torres* and in the present case. I would note probable jurisdiction and set the case for oral argument. Accordingly, I dissent from the Court's summary disposition.

---

[5] Appellant's suggestion that increased federal reimbursements might not go to the class members at all but instead be used to provide other services or to lower taxes, see Juris. Statement 10, demonstrates the speculative nature of this fear of economic disruption.