**COMMONWEALTH OF PUERTO RICO, by Rafael HERNANDEZ COLON, Its Governor, Juan M. Rivera, Secretary of Labor and Human Resources, and Andres Serrano, Director, Puerto Rico Veterans Affairs Bureau, Plaintiffs,**

v.

**Harry N. WALTERS, Administrator of Veterans Affairs of the United States, John Vogel, Chief Benefits Director, Veterans Administration, Herbert B. Mars, Acting Director, Compensation and Pension Service, Veterans Administration, Charles C. Freeman, Director VA Medical and Regional Office Center, San Juan, Puerto Rico, Defendants.**

Civ. No. 84-2606.

United States District Court,
D. Puerto Rico.

April 21, 1987.

Marcos A. Ramírez-Lavandero, Ramirez & Ramirez, San Juan, P.R., for plaintiffs.

Gary H. Montilla, Asst. U.S. Atty., Daniel López Romo, U.S. Atty., Richard K. Willard, Asst. Atty. Gen., San Juan, P.R., for defendants.

## OPINION AND ORDER

FUSTE, District Judge.

This is an action filed by the Commonwealth of Puerto Rico against the named defendants, seeking declaratory, injunctive, and mandamus relief. The claim by the Commonwealth is to the effect that defendants jointly and severally have incurred in constitutional violations by reducing Puerto Rico veterans' 100% disability compensation benefits in a discriminatory manner. The Commonwealth attempts to sustain its capacity to bring this suit based on principles of *parens patriae*. In turn, it is alleged that the Commonwealth possesses sufficient adversary interests tantamount to standing to sue under article III of the United States Constitution. The Commonwealth further alleges that it has a proprietary interest in veterans' pension compensations and that the acts of the defendants have affected the Commonwealth's economical proprietary capacity. Defendants have filed a motion to dismiss under Fed.R. Civ.P. 12(b). We view the motion to dismiss as one which requires that we give the complaint a liberal construction within the framework of complaint and motion to dismiss. *Warth v. Seldin*, 422 U.S. 490, 501, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975). The basic facts are the following:

United States' citizens residing in Puerto Rico have served in the Armed Forces of the United States from 1917 to present. Puerto Rico soldiers served in the First and Second World Wars, the Korean war, and the Vietnam conflict. As a result of said participation, Puerto Rico's veteran population is approximately 200,000 in number, of which approximately 1,000 are claimed to be affected by this suit. These veterans are entitled to all the benefits contained in the Federal Veterans Benefits Act of 1978, 38 U.S.C. secs. 301–522.

On or about the year 1981, the Central Veterans Administration Office undertook a national selective audit, whereby the pen-

sion and compensation rates of veterans of different states were compiled and compared. A report on selected compensation and pension data by state of residency was prepared in March 1981. As a result of this statistical report, the Veterans Administration became concerned with the high percentage of 100% mental incapacity disability ratings in Puerto Rico as compared with the percentages of other states of the Union. The Subcommittee on Hospitals and Health Care of the Committee on Veterans Affairs, United States House of Representatives, issued a release demanding an immediate investigation into suspected fraud and abuse of taxpayers' dollars in the award of veterans' service-connected disability benefits in Puerto Rico. In response to this concern, the Veterans Administration Central Office in Washington, D.C. began an investigation of psychiatric disability cases in Puerto Rico only. This included visits to the Veterans Administration Medical Center in San Juan from December 1981 through March 1983, for the purpose of training the rating board personnel and examining physicians. *See* Amended Complaint, Docket Document No. 22 at paras. 20–22. In 1982, a new adjudication memorandum was issued to all Puerto Rico Veterans Administration rating board specialists on the subject of neuropsychiatric cases. The memorandum defined a 100% neuropsychiatric-disabled veteran as follows:

> It is a person that is definitely totally unadjusted both socially and industrially. Among other things he is a person who is unable to relate with others, does not function as part of a community and a family, indifferent to almost everything, prevented due to his mental status to satisfactorily pursue training, and with an employment history full of failures.

*See* Amended Complaint, Docket Document No. 22 at para. 22.

Initially, the Veterans Administration Central Office understood that the alarming number of 100% disability ratings awarded in Puerto Rico were the result of extensive reliance on medical reports of fee-basis contracted doctors who were suspected of being liberal in the 100% disability evaluations and proposed ratings. On March 3, 1982, the Inspector General of the Veterans Administration conducted an investigation to evaluate program management at the VA Medical and Regional Office Center in San Juan. A report was issued on February 22, 1983 (Report No. 3R2–A05–043). The report concluded that the reliance on a fee-basis doctor had no significant effect in the 100% ratings. The problem seemed to be internal. A mass review of the 100% disabled-rated veterans residing in Puerto Rico was ordered by defendant Administrator Walters. Also, the Committee on Veterans Affairs of the United States House of Representatives recommended that, in order to review the service-connected psychiatric disability cases in Puerto Rico, the rating jurisdiction should be transferred. On January 18, 1984, the Puerto Rico office of the Veterans Administration was divested of its rating jurisdiction in initial neuropsychiatric claims. Concurrently with this transfer, a new set of procedures was notified to codefendant Charles C. Freeman[1] in San Juan. These procedures established that all neuropsychiatric claims, reopened claims, and claims for increases, were to be referred to the Department of Veterans Benefits, Central Office, for review prior to being accepted for rating purposes. If the Central Office found that the claim was meritorious, it was then forwarded to a regional office located in Winston-Salem, North Carolina, for rating action.[2] This new practice

---

1. Local Director of the Veterans Administration Medical and Regional Office Center in San Juan, Puerto Rico.

2. As a result thereof, rating jurisdiction was transferred from VA–SJ for determination of alleged service-connected psychological disability cases involving:
  (a) disability compensation

(b) hospitalization in excess of 21 days under 38 C.F.R. sec. 4.29
(c) reopened claims
(d) hospitalization in excess of 6 months
(e) original claims
(f) scheduled VA examinations
(g) competency
(h) service connection for cause of death
(i) future physical examination review project

lasted until June 1984, when rating jurisdiction for psychiatric disability was returned to the VA–Puerto Rico rating boards.

Plaintiff alleges that in many of these reviews, veterans were denied due process hearings as required by 38 C.F.R. sec. 3.105(e) (1986). Under these factual allegations, the Commonwealth avers that because it possesses a solid interest in assuring that its residents have the full benefits of the Federal laws for the protection of veterans, it may duly represent them as parent with custody over these citizens in the present suit. Alternatively, it claims to possess a right of its own justiciable in Federal court under the United States Constitution. Jurisdiction is pleaded under 28 U.S.C. secs. 1331 and 1364. For the reasons hereinafter discussed, we find that plaintiff has failed to plead a cognizable cause of action.

## I.

The Commonwealth claims that the veterans are being harmed by the defendants' above-described conduct pattern. In so claiming, the Commonwealth relies on *Missouri v. Illinois*, 180 U.S. 208, 21 S.Ct. 331, 45 L.Ed. 497 (1901), which recognized that, as a general proposition, a state may have capacity to sue in representation of its citizens in matters related to health and prosperity of its inhabitants. We do not agree that said decision extends to the facts of this case.

In *Commonwealth of Massachusetts v. Mellon*, 262 U.S. 447, 43 S.Ct. 597, 67 L.Ed. 1078 (1923), the Commonwealth of Massachusetts filed a suit in Federal court challenging the constitutionality of a Federal law known as the Maternity Act. There, the Supreme Court confronted the issue of whether a suit may be maintained by a state in its capacity of representative of its citizens, issue which was affirmatively answered by the Court, while at the same time it defined the outer limits of such claim:

> (j) chapter 35 dependents
> (k) special neuropsychiatric review

**3.** The Commonwealth of Puerto Rico should be equated to a state for this analysis, *but see*

> [I]t cannot be conceded that a state, as parens patriae, may institute judicial proceedings to protect citizens of the United States from the operation of the statutes thereof.

*Mellon*, 262 U.S. at 485, 43 S.Ct. at 600.

■ The norm is now settled that a state lacks *parens patriae* standing to file a judicial action against the Federal Government on the established principle that the Federal Government is the ultimate representative of its citizens. *Commonwealth of Pennsylvania, by Shapp v. Kleppe*, 533 F.2d 668 (D.C.Cir.), *cert. denied*, 429 U.S. 977, 97 S.Ct. 485, 50 L.Ed.2d 584 (1976). Notwithstanding, the Commonwealth of Puerto Rico alleges that the solid principles of Federalism would not militate against a *parens patriae* action because it does not seek to obstruct the Federal laws, but to vindicate them. This rationale, even though logical, is based on a wrong premise. Veterans' benefits have been a Federal concern since the establishment of the Union and the Federal Government has created comprehensive laws, administrative bodies, and regulations that allow an individual veteran to vindicate his rights. When a state sues the Federal Government over rights and benefits flowing from Federal legislation, the *parens patriae* rationale is not applicable because the Federal Government is the ultimate sovereign over its citizens' rights. *Mass v. Laird*, 451 F.2d 26, 29 (1st Cir.1971), *citing South Carolina v. Katzenbach*, 383 U.S. 301, 86 S.Ct. 803, 15 L.Ed.2d 769 (1966) (Commonwealth of Massachusetts does not achieve any special status as an alleged protector of the rights of its citizens when the rights seeking vindication are based solely on the United States citizens' nature and not as a sovereign with unique interests).

■ As we see it, this suit is an attempt by a state[3] "to insert itself between the national government and the legitimate objects of its administrative authority." *See*

Torruella, J.R., *the Supreme Court and Puerto Rico*, Edit.Univ.P.R. (1985); Cabranes, *Colonialism as Constitutional Doctrine*, 100 Harv.L.Rev. 450 (1986).

*Commonwealth of Pennsylvania, by Shapp,* 533 F.2d at 679. *Parens patriae* considerations do not give rise to standing to sue under the facts of this case. *Mellon* bars relief where a state plaintiff challenges the discriminatory enforcement of a Federal statute or policy like the one followed by the Veterans Administration. *Alfred L. Snapp & Son, Inc. v. Puerto Rico,* 458 U.S. 592, 610 n. 16, 102 S.Ct. 3260, 2370 n. 16, 73 L.Ed.2d 995 (1982). Other Federal-court decisions have reaffirmed the vitality of *Mellon* as we read the decision. *See State of Iowa ex. rel. Miller v. Block,* 771 F.2d 347, 354–55 (8th Cir.1985), *cert. denied,* — U.S. —, 106 S.Ct. 3312, 92 L.Ed.2d 725 (1986); *Maryland People's Counsel v. F.E.R.C.,* 760 F.2d 318, 320 (D.C.Cir.1985). It is indeed simplistic and constitutionally unreal to argue that principles of Federalism are not offended when a state pretends to intervene in the management of Federal affairs as in this case. *C.f., Harris v. Rosario,* 446 U.S. 651, 100 S.Ct. 1929, 64 L.Ed.2d 587 (1980).

## II.

■ Alternatively, the Commonwealth has alleged an injury to its proprietary interest. The Amended Complaint dated May 2, 1985 alleges that a specific injury gives rise to a Federal institutional cause of action, to wit: (1) The annual reduction in compensation alone at which defendants aim to reduce compensation to Puerto Rico veterans, with a value of $10.8 Million, will increment the Commonwealth's burden of providing social services and welfare assistance to these, and (2) an increment in Puerto Rico's social problems will arise. Essentially, the Commonwealth is concerned with the fact that a shift of financial burdens will occur if the mentally-disabled veterans' compensation pensions are reduced.

On the other hand, defendants contend that the Commonwealth has no standing in this case. They argue that the veterans' mentally-disabled compensation monies are not granted to give a relief or economical assistance to the state, but rather to give the veteran an exclusive, personal benefit for the loss occurred while in active military service.

The Commonwealth must overcome a triple barrier for its cause of action to survive. First, the Commonwealth must prove that it is within the class of persons with respect to whom the questioned act is unconstitutional, *see Heald v. District of Columbia,* 259 U.S. 114, 123, 42 S.Ct. 434, 435, 66 L.Ed. 852 (1922). Second, the Commonwealth must establish that it possesses a proprietary interest that has been infringed, *Beauchesne v. Nimmo,* 562 F.Supp. 250, 254 (D.Conn.1983). Third, the justiciability requirement of a "case or controversy" of article III of the United States Constitution requires that the plaintiff seeking judicial intervention must show that he personally has suffered actual or threatened injury as the result of the defendant's conduct. Concurrently with this constitutional requirement, the Court has imposed prudential considerations bearing on standing or limitations to an actionable chain of causation between the challenged government conduct and the asserted injury. *See Allen v. Wright,* 468 U.S. 737, 759, 104 S.Ct. 3315, 3328, 82 L.Ed.2d 556 (1984); *Valley Forge Christian College v. Americans United for Separation of Church and State,* 454 U.S. 464, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982). The injury requirement is met when a plaintiff has suffered some actual or threatened injury as a result of the putative illegal conduct of the defendants. *Gladstone Realtors v. Village of Bellwood,* 441 U.S. 91, 99, 99 S.Ct. 1601, 1607, 60 L.Ed.2d 66 (1979). It need not be substantial, it need only to exist. *Rental Housing Ass'n. of Greater Lynn v. Hill,* 548 F.2d 388, 389 (1st Cir.1977). Obviously, these issues are related to the law and legislative intent relating to veterans' benefits. *See Association of Data Processing Service Organizations, Inc. v. Camp,* 397 U.S. 150, 154, 90 S.Ct. 827, 830, 25 L.Ed.2d 184 (1970) (Congress can, of course, resolve the question of standing one way or another, save as the requirements of article III dictate otherwise). *Department of Banking v. Clarke,* 809 F.2d 266 (5th Cir.1987); *Universal Shipping Co.*

*v. United States,* 652 F.Supp. 668, 671 (D.D.C.1987).

As stated before, the Commonwealth's alleged injury is that, as a result of defendants' acts, it may now have to assume the financial burden of providing services to these disabled veterans.[4] The Commonwealth sustains that this type of injury places it inside the court rightfully. Social Security cases are cited in support of this proposition. In so doing, the Commonwealth ignores that Social Security and Medicare legislation contemplates the states as direct recipients of Federal funds. *E.g., State of Florida v. Weinberger,* 492 F.2d 488, 490 (5th Cir.1974) (Medicaid is a program established by Congress under which states receive funds for use in providing medical assistance to the aged, blind, disabled and others); *Holden v. Heckler,* 584 F.Supp. 463, 467 (N.D.Ohio 1984) (the Social Security Act and the Social Security Disability Insurance were established to relieve state and local governments of the financial burden of assisting the disabled); *City of New York v. Heckler,* 578 F.Supp. 1109, 1121 (E.D.N.Y.), *aff'd,* 742 F.2d 729 (2nd Cir.1984), *reh. denied,* 755 F.2d 31 (2nd cir. 1985) (the Social Security and Social Security Insurance programs were enacted in part to relieve state and local welfare burdens). This is not the case with veterans' compensation benefits.

Congress' interest in enacting Federal laws providing benefits for veterans has as a primary purpose the compensation for permanent psychical/mental losses which have occurred in connection with the military service of the veteran. *See* 38 U.S.C. secs. 310, 331, 351; *The Provision of Federal Benefits for Veterans: An Analysis of Major Legislation, 1862–1954,* 84th Cong., 1st Sess., House Comm. Print. No. 171, Dec. 28, 1955 at 1–52. Under the disability benefits afforded to veterans, the Congressional purpose is to centralize and provide uniform treatment for the soldiers of the Nation. In no way the intent was to relieve or assist the states economically. *Id.,* at 288–292.[5] *See generally,* W.L. Shaw, *State Military Legislation,* 44 The Judge Adv.J. at 52 (1972).

Therefore, the Commonwealth has failed to satisfy the statutory, constitutional, and court-imposed limitations to an actionable chain of causation. *Orange Park Florida T.V., Inc. v. Federal Communications Commission,* 811 F.2d 664 (D.C.Cir.1987). Simply put, the Commonwealth is not within the zone of interest protected by the veterans legislation. A more generous zone-of-interest test is not to be applied in standing inquiries arising strictly under the Constitution and laws of the United States. *Clarke v. Securities Industry Ass'n,* —— U.S. ——, 107 S.Ct. 750, 757–58 n. 16, 93 L.Ed.2d 757 (1987).

The above is without prejudice of the individual veteran's rights under the laws and regulations. The case is hereby DISMISSED.

IT IS SO ORDERED.

---

**4.** The Commonwealth has had sufficient time to bring forward specific evidence of assistance cost-shifting from the Federal Government to local government. This waters down their argument of actual injury. Even though the record is devoid of specific facts to this effect, we have granted plaintiff the benefit of taking its complaint as true at this stage of proceedings. *See Kozera v. Spirito,* 723 F.2d 1003 (1st Cir.1983).

**5.** The Commonwealth's alleged injury is one of an increased cost to its social programs, with the consequent financial burden regarding the allegedly-deprived veterans. The Commonwealth has not established a proprietary interest. *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 1491, 84 L.Ed.2d 494 (1985); *Hawaii v. Standard Oil Co. of Cal.,* 405 U.S. 251, 92 S.Ct. 885, 31 L.Ed.2d 184 (1972). We have examined the file before us, in light of the applicable law, and fail to find that such cause of action can validly exist. The Commonwealth does not possess a proprietary interest over the pension monies received by discharged veterans.