**Marcosa B. Dela PENA, Appellant,**

v.

**Edward J. DERWINSKI Secretary
of Veterans Affairs, Appellee.**

No. 91–41.

United States Court of Veterans Appeals.

Submitted Jan. 9, 1991.

Decided Jan. 3, 1992.

As Amended Jan. 8, 1992.

Marcosa B. Dela Pena, pro se.

Raoul L. Carroll, Acting Gen. Counsel, Barry M. Tapp, Asst. Gen. Counsel, Andrew J. Mullen, Deputy Asst. Gen. Counsel, and Dean E. Sharp, Washington, D.C., were on the pleadings, for appellee.

Before NEBEKER, Chief Judge, and IVERS and STEINBERG, Associate Judges.

NEBEKER, Chief Judge, filed the opinion of the Court, in which IVERS, Associate Judge, joined. STEINBERG, Associate Judge, filed a separate dissenting opinion.

NEBEKER, Chief Judge:

This case presents for review a December 7, 1990, decision of the Board of Veterans' Appeals (BVA or Board) in which the Board denied appellant death pension benefits under 38 U.S.C. § 107(a) and 38 C.F.R. § 3.8(c) because her husband did not have the active wartime service requisite for such benefits. The Secretary moves for summary affirmance and argues that the decision of the United States Court of Appeals for the District of Columbia Circuit in *Quiban v. Veterans Admin.*, 928 F.2d 1154 (D.C.Cir.1991), upholding the constitutionality of 38 U.S.C. § 107(a), is dispositive. While the Court is not bound by the determination of the District of Columbia Circuit, the Court is persuaded by the reasoning and wisdom of the *Quiban* decision. We affirm the Board's December 7, 1990, decision.

Modesto C. Dela Pena, the deceased husband of appellant, served as a member of the Philippine Commonwealth Army in the Service of the Armed Forces of the United States from January 1942 to May 1946. On December 7, 1990, the BVA denied appellant basic eligibility for death pension benefits because her husband did not have the requisite active wartime service.

The term "veteran" means a person who served in the active military, naval, or air service, and who was discharged or released therefrom under conditions other than dishonorable. 38 U.S.C. § 101(2) (1988). Section 107(a) states in pertinent part:

Service before July 1, 1946, in the organized military forces of the Government of the Commonwealth of the Philippines, while such forces were in the service of the Armed Forces of the United States pursuant to the military order of the President dated July 26, 1941, ... *shall not be deemed to have been active military, naval, or air service for the purposes of any law of the United States conferring rights, privileges, or benefits*

upon any person by reason of the service of such person....

38 U.S.C. § 107(a) (1988) (emphasis added).

The issue of appellant's entitlement to benefits is not one for summary disposition under our holding in *Frankel v. Derwinski*, 1 Vet.App. 23 (1990). It has, accordingly, been referred to a panel of three judges. In this decision, we embrace the holding in *Quiban*.

Accordingly, the decision of the BVA is AFFIRMED.

STEINBERG, Associate Judge, issued a separate opinion:

The constitutional issues raised by the *pro se* appellant here go to the very heart of the special nature of veterans' benefits as entitlements earned by service to country. *See Fugere v. Derwinski*, 1 Vet.App. 103, 108 (1990) ("veterans benefits, entitlement to which is established by service to country at great personal risk, are 'akin to Social Security benefits'" entitlement to which is a constitutionally protected property interest (quoting *Walters v. National Assoc. of Radiation Survivors*, 473 U.S. 305, 333, 105 S.Ct. 3180, 3195, 87 L.Ed.2d 220 (1985))). These issues are deserving of more time and attention than the Court seems inclined to give them in rejecting the appellant's constitutional contention made in reliance on the opinion of the District Court in *Quiban v. Veterans Admin.*, 713 F.Supp. 436 (D.D.C.1989), *reversed,* 928 F.2d 1154 (D.C.Cir.1991). Hence, I do not join in the Court's decision.

I believe the best course would be to decide the constitutional issues only after they have been fully briefed and argued before this Court. The majority here adopts the reasoning of the District of Columbia Circuit in *Quiban*. The D.C. Circuit there held that the outcome was "controlled ... as to the merits of the constitutional challenge" by the Supreme Court's decision in *Harris v. Rosario*, 446 U.S. 651, 100 S.Ct. 1929, 64 L.Ed.2d 587 (1980). *Quiban,* 928 F.2d at 1163.

In *Rosario*, the Supreme Court upheld, on a rational basis review, a statutory limitation on Aid to Families with Dependent Children (AFDC) payments to persons residing in Puerto Rico. The decision was based upon three factors, which the court found to provide a rational basis for the disparate treatment. The three factors in *Rosario* were: "Puerto Rican residents do not contribute to the federal treasury; the cost of treating Puerto Rico as a state under the statute would be high; and greater benefits could disrupt the Puerto Rican economy." 446 U.S. at 652, 100 S.Ct. at 1930; *see also Califano v. Torres,* 435 U.S. 1, 5 n. 7, 98 S.Ct. 906, 908 n. 7, 55 L.Ed.2d 65 (1978) (per curiam).

The D.C. Circuit in *Quiban* stated that "[t]he three factors found dispositive in *Rosario,* and earlier in *Torres,* ... are also present here." *Quiban,* 928 F.2d at 1161. However, the criteria relied upon in *Rosario* do not dispositively establish the facial constitutionality of section 107 under the *Quiban* rational-basis analysis. Although all three concerns may be applicable to the present case, they certainly are not all present in all applications of section 107, as they are with regard to the AFDC statute at issue in *Rosario*. For example, section 107 would deny veterans' benefits to a veteran of Philippine service even if he were a resident of the United States. In that case, the veteran would presumably be a contributor to the U.S. Treasury, and the existence of VA benefits payments would not risk the disruption of the economy of the Philippines. Therefore, only the second of the *Rosario* criteria—the high cost to the United States of including Philippines residents—would seem to be applicable.

Neither *Rosario* nor *Torres* held that the budgeting factor alone provides a rational basis for the disparate treatment of equally qualified applicants. Because the three-factor rational-basis analysis from *Rosario* does not adequately resolve the facial constitutionality of section 107, the Court in the instant case should be deciding only the question of the constitutionality of section 107 as applied to the appellant and others like him who reside in the Philippines.