UNITED STATES of America,
Plaintiff,

v.

Rene Gonzalez AYALA, Defendant.

No. Crim. 97–76 DRD.

United States District Court,
D. Puerto Rico.

March 29, 1999.

Jacabed Rodriguez–Coss, U.S. Atty's Office, Dist. of P.R., Crim. Div., Hato Rey, P.R., for Plaintiff.

Rafael F. Castro–Lang, San Juan, PR, Joseph Frattallone–Marti, Hato Rey, PR, Lydia Lizarribar–Buxo, Hato Rey, PR,

Juan F. Matos–de–Juan, Guaynabo, PR, Luis A. Plaza–Mariota, Hato Rey, PR, Raymond Rivera–Esteves, Bayamon, PR, Ramon L. Walker–Merino, San Juan, PR, for Defendant.

## OPINION AND ORDER

DOMINGUEZ, District Judge.

Co-defendant, René González Ayala, has requested the court to dismiss the indictment on the grounds that the Commerce Clause of the United States Constitution does not apply to Puerto Rico and hence the federal drug trafficking legislation charged in the instant case, 21 U.S.C.A. § 841(a)(1), does not apply to the indictment.[1]

Co-defendant González Ayala further avers that, even assuming that the federal narcotics law applies to Puerto Rico, he was previously charged and sentenced to a term of four years under Article 401 of the Puerto Rico Controlled Substance Law, P.R. Laws Ann., tit. 24 § 2401 et seq., under the P.R. Weapons Law infringing Articles 6 and 8, P.R. Laws Ann., tit. 25 § 416 and 418, and the evidence related to these cases is to be produced in the instant case. As such, defendant argues double jeopardy attaches to the present case. The court disagrees with both of defendant's claims. The court explains.

## I. Applicability of 21 U.S.C. 841(a)(1) to Puerto Rico

■ Drug trafficking enterprises are regulated by Congress as an economic activity that affects interstate commerce and hence comes within Congress' regulatory power under the Commerce Clause. *United States v. Zorrilla*, 93 F.3d 7 (1st Cir. 1996).

"Many courts, including this court, have held that drug trafficking is precisely the kind of economic enterprise that substantially affects interstate commerce and that, therefore, comes within Congress' regulatory power under the Commerce Clause."[2] (Citations omitted)

*U.S. v. Zorrilla, Id.,* was a constitutional challenge, after *United States v. Lopez,* 514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995), to the sentencing enhancement for selling drugs within 1,000 feet of a school, 21 U.S.C. 860(a). Both District and Circuit Courts found that, notwithstanding *United States v. Lopez, Id.,* Congress had power under the Commerce Clause to regulate the selling of drugs within school zones.

"It is not surprising to find that every court which has confronted the appellant's argument in the post-López era has upheld Section 860(a) against a Commerce Clause challenge. (Citations omitted.) Because we do not doubt that Congress has the authority under the commerce clause to regulate an activity as clearly commercial in character as drug trafficking, and because the particular statute that the appellants challenge is nothing more than a sentence-enhancer applicable to certain proscribed drug trafficking activities, we hold that 21 U.S.C. 860(a) does not trespass into constitutional forbidden terrain."

*United States v. Zorrilla,* 93 F.3d at 9, (citing *Lopez,* 514 U.S. at 564, 115 S.Ct. at 1633).

■ Since congressional power to regulate drug trafficking is founded on the Commerce Clause, the court first examines if said clause applies to Puerto Rico. The last time the First Circuit Court examined this matter, the court dispatched the con-

---

1. Defendant is charged in the indictment with a conspiracy to knowingly and intentionally distribute multi-kilogram quantities of controlled substances, that is to say in excess of five (5) kilograms of heroin, in excess of five (5) kilograms of cocaine, in excess of five (5) kilograms of cocaine base and in excess of one hundred (100) kilograms of marihuana.

2. *United States v. Zorrilla,* 93 F.3d at 8, affirmed the District Court Opinion at 898 F.Supp. 45, 46–48 (D.P.R.1995).

troversy via a short, terse footnote. *Trailer Marine Transport Corp. v. Rivera Vazquez*, 977 F.2d 1, 7, n. 3 (1st Cir.1992). Although the court recognized some autonomy for Puerto Rico "normally associated with states of the Union,"[3] The matter was summarily disposed as follows:

"Both the Supreme Court and this court have long held or assumed that Congress has power under the Commerce Clause to regulate commerce with Puerto Rico. *See Secretary of Agriculture v. Central Roig Refining Co.*, 338 U.S. 604, 616, 70 S.Ct. 403, 409, 94 L.Ed. 381 (1950) (Sugar Act of 1948 applied to Puerto Rico through the Commerce Clause.) *Puerto Rico Telephone Co. v. FCC*, 553 F.2d 694, 701 (1st Cir.1977) (Federal Communications Commission regulations applied via a commerce clause to government-owned Telephone Company in Puerto Rico). Thus, in one aspect, the question 'whether the Commerce Clause applies to Puerto Rico' has been settled in the affirmative for many years."

The case of *Puerto Rico Telephone Co.*, 553 F.2d at 701, is of critical importance since in that post–1952 case the government of Puerto Rico precisely challenged the power of Congress to regulate the telephone company through the Commerce Clause. The Court of Appeals dismissed the challenge merely stating that "... we feel constrained to rule that PRTC's ownership and control of the telephone equipment involved in this case are not exempt from FCC regulation pursuant to the Commerce Clause."

Further, the Court of Appeals in *Trailer Marine Transport Corp.*, 977 F.2d at 9, found unpersuasive, and refused to follow, Commonwealth of Puerto Rico Supreme Court precedents, (particularly under the case of *R.C.A. Communications Inc. v. Gobierno De La Capital*, 91 D.P.R. 416, 1964 WL 14217 (1964), which took "a different view" as to the application of the Commerce Clause and the Dormant Commerce Clause of the U.S. Constitution to Puerto Rico.

■ The Commerce Clause of the United States, therefore, applies to Puerto Rico and hence, 21 U.S.C. 841(a)(1) is also applicable to Puerto Rico, the source of congressional power being the Commerce Clause or the Territorial Clause of the United States Constitution.[4]

## II. The Double Jeopardy Claim

The Fifth Amendment to the Constitution of the United States specifies, in pertinent part, that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb ..." The defendant argues that because of his prior conviction by the Commonwealth court, federal au-

---

**3.** Notwithstanding a degree of autonomy and independence similar to that of a state recognized by the Circuit Court in *Trailer Marine Transport Corp.*, 977 F.2d at 8, based on the case of *Examining Board v. Flores Otero*, 426 U.S. 572, 594, 96 S.Ct. 2264, 2277, 49 L.Ed.2d 65 (1976), later Supreme Court precedent, (post *Flores Otero*,) has stated that congressional power to legislate over Puerto Rico stems from the Territorial Clause of the Constitution of the United States, Article IV, § 3, cl. 2. *Harris v. Rosario*, 446 U.S. 651, 100 S.Ct. 1929, 1930, 64 L.Ed.2d 587 (1980). Thus, Congress is free to treat Puerto Rico differently from autonomous states of the Union through the Territorial Clause "so long as there is a rational basis." *Harris v. Rosario*, 446 U.S. at 651–52, 100 S.Ct. 1929. The "uniqueness" of the relationship (cited by the court at *Trailer Marine Transport*, 977 F.2d at

7), was only later recognized by a minority of two justices of the nine-member Supreme Court. *Harris v. Rosario, Id.* The last word from the Supreme Court of the United States on Puerto Rico subjects the island to federal legislation through the plenary powers of the Territorial Clause of the United States Constitution. *Harris v. Rosario, Id.* See *Sea–Land Services v. Municipality of San Juan*, 505 F.Supp. 533, 544, (D.P.R.1980); *New Progressive Party v. Hernandez Colon*, 779 F.Supp. 646, 661, (D.P.R.1991) ("Hence, the inescapable truth is that the territory clause is, and will continue to be under our constitutional scheme, the source of congressional authority over Puerto Rico.")

**4.** See footnote 3, *supra*.

thorities may not charge him for the same illegal underlying conduct. To further bolster and support his double jeopardy claim, defendant further asserts that the evidence now being used against him is the same initially obtained and used by state law enforcement agents.

The legal theory applicable to the argument is called the "dual sovereign" rule. It states that "prosecutions undertaken by separate sovereign governments, no matter how similar they may be in character, do not raise the specter of double jeopardy as that constitutional doctrine is commonly understood." *United States v. Guzman*, 85 F.3d 823, 826 (1st Cir.1996) (citing *Heath v. Alabama*, 474 U.S. 82, 88, 106 S.Ct. 433, 88 L.Ed.2d 387 (1985)); *United States v. Lopez Andino*, 831 F.2d 1164, 1167 (1st Cir.1987), *cert. denied*, 486 U.S. 1034, 108 S.Ct. 2018, 100 L.Ed.2d 605 (1988).

■ As described by the Supreme Court, "[t]he dual sovereignty doctrine is founded on the common law conception of crime as an offense against the sovereignty of the government. When a defendant in a single act violates the 'peace and dignity' of two sovereigns by breaking the laws of each, he has committed two distinct 'offenses'". *Heath*, 474 U.S. at 88, 106 S.Ct. 433, 88 L.Ed.2d 387 (1985). Hence, "it is well settled that when states enact and enforce their own criminal laws, they are acting pursuant to their own sovereign power, not that of the national government." *Lopez–Andino*, 831 F.2d at 1168. Under the above scenario, a defendant can be prosecuted and punished by both sovereigns.[5] *Lopez–Andino, Id.*

In the instant case, the defendant was initially prosecuted and convicted by the Commonwealth of Puerto Rico. Federal charges have now been brought against him. Defendant undoubtedly claims that the instant case falls under what has become known as the *Bartkus* exception to the rule, *see Bartkus v. Illinois*, 359 U.S. 121, 79 S.Ct. 676, 3 L.Ed.2d 684 (1959). Accordingly, the court proceeds now to analyze defendant's legal contention.

In *Bartkus*, the defendant was tried and acquitted in federal district court for robbery. Subsequently, he was indicted by an Illinois grand jury for the same robbery. He was then tried and convicted of this robbery in Illinois state court. The defendant appealed to the Supreme Court, which upheld the state conviction. The Supreme Court indicated that the defendant could not reasonably support a double jeopardy claim:

> It does not support the claim that the State of Illinois in bringing its prosecution was merely a tool of the federal authorities, who thereby avoided the prohibition of the Fifth Amendment against a retrial of a federal prosecution after an acquittal. It does not sustain a conclusion that the state prosecution was a sham and a cover for a federal prosecution, and thereby in essential fact another federal prosecution.

*Bartkus v. Illinois*, 359 U.S. at 123–24, 79 S.Ct. 676, 3 L.Ed.2d 684 (1959).

While some courts have interpreted *Bartkus* as dictum in nature, most courts including the First Circuit, treat the *Bartkus* limitation as sound law. *United States v. Guzman*, 85 F.3d at 826–827. These courts have defined what has become known as the *Bartkus* exception to the dual sovereignty doctrine. The exception states that "[t]he Double Jeopardy Clause may be violated despite single prosecutions by separate sovereigns when one prosecuting sovereign can be said to be acting as a tool of the other." *United States v. All Assets of G.P.S. Automotive Corp.*, 66 F.3d 483, 494 (2nd Cir.1995) (citations omitted).

---

**5.** Despite Puerto Rico's constitutional status as a Commonwealth (be as a "territory" or under a "unique" relationship), the island is treated as a separate sovereign for double jeopardy purposes. *United States v. Lopez*

*Andino*, 831 F.2d 1164, 1168 (1st Cir.1987). ("It is established that Puerto Rico is to be treated as a state for the purposes of double jeopardy clause.")

However, the First Circuit has emphasized that the *Bartkus* exception is narrow. Said doctrine applies exclusively where "one sovereign so thoroughly dominates or manipulates the prosecutorial machinery of another that the latter retains little or no volition in its own proceedings." *Guzman,* 85 F.3d at 827 (citations omitted).

In *Guzman,* the court sets forth the First Circuit's test for meeting this standard. The defendant must proffer sufficient evidence to establish a prima facie case that the dual sovereignty rule should not apply "because one sovereign was a pawn of the other, with the result that the notion of two supposedly independent prosecutions is merely a sham." *Guzman,* 85 F.3d at 827. If the defendant establishes this prima facie case, then "the government must shoulder the burden of proving that one sovereign did not orchestrate both prosecutions, or, put another way, that one sovereign was not a tool of the other." *Id.*

■ Defendant has failed to proffer evidence complying with the required criteria and thus not even the entry level burden is met. First, "mere overlap between two prosecutions does not establish a double jeopardy violation." *United States v. Felix,* 503 U.S. 378, 386, 112 S.Ct. 1377, 118 L.Ed.2d 25 (1992). Further, "even significant cooperation between state and federal authorities does not provide a basis for applying the *Bartkus* exception." *United States v. G.P.S. Automotive Corp.,* 66 F.3d 483, 495 (2nd Cir.1995).

The crucial question is not whether the prosecutions overlap, but whether they are independent. In the instant case, there is no evidence that the federal authorities are being manipulated by the Commonwealth or vice versa. By not meeting his entry-level burden, the defendant has failed to establish an adequate basis for invoking the *Bartkus* exception to the dual sovereign rule.

■ A second and independent rationale for denying the defendant's motion to dismiss the indictment is that "successive prosecutions ... do not violate double jeopardy principles if the second prosecution involved substantively different offenses." *United States v. Perez–Perez,* 72 F.3d 224, 226 (1st Cir.1995). Under the test adopted in *Blockburger,* offenses are different for double jeopardy purposes if each offense "requires proof of an additional fact which the other does not." *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932).

Defendant has not shown to the court that his conviction in the Commonwealth courts is for transactions that occurred in the exact same years, the same amount of drugs, and the same type of drugs. Hence, defendant's claim of double jeopardy also falls under the *Blockburger* analysis.

### III.

### CONCLUSION

For the reasons stated above co-defendant González Ayala's Motion to Dismiss based on the non-applicability of the Commerce Clause or under the Double Jeopardy Defense is **DENIED.**

**IT IS SO ORDERED.**