Emma RODRIGUEZ, Plaintiff,

v.

**PUERTO RICO FEDERAL AFFAIRS ADMINISTRATION, et al.,** Defendants.

No. CIV.A.03–2246(JR).

United States District Court, District of Columbia.

Sept. 30, 2004.

Dan Charles Getman, Law Office of Dan Getman, New Paltz, NY, for Plaintiff.

### MEMORANDUM

ROBERTSON, District Judge.

Plaintiff brings this claim under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"). She alleges that defendants, an executive agency of the Commonwealth of Puerto Rico and supervisory employees of that agency, violated FLSA

by 1) failing to pay her for all hours that she worked for defendants; 2) failing to pay her overtime wages for work over 40 hours per week; and 3) retaliating against her by terminating her employment when she complained about defendants' failure to pay proper wages.

Defendants have moved to dismiss under Federal Rules of Civil Procedure 12(b)(1)and 12(b)(6), arguing that the Puerto Rico Federal Affairs Administration is immune from this suit under principles of sovereign immunity and that retaliation protection is not available under FLSA for plaintiffs who have made internal complaints about alleged violations of FLSA. For the reasons set forth below, defendants' motion must be denied.

### Sovereign Immunity

Defendants claim that this court is without jurisdiction to hear this complaint because the PRFAA, an agency of the Commonwealth of Puerto Rico, is immune from private suits for damages under the doctrine of sovereign immunity.[1] Defendants also assert that employees of the agency enjoy derivative immunity. (Obviously, if the PRFAA is not immune, which it is not, its employees also lack immunity.)

■ FLSA, as amended in 1974, permits private suits for monetary damages against "any employer (including a public agency) in any Federal or State court . . . ." 29 U.S.C. § 216(b). "Public agency" is defined to mean: "the Government of the United States; the government of a State or political subdivision thereof; any agency of the United States (including the United States Postal Service and Postal Rate Commission), a State, or a political subdivision of a State; or any interstate governmental agency." 29 U.S.C. § 203(x). "State" is defined to mean: "any State of the United States or the District of Columbia or any Territory or possession of the United States." 29 U.S.C. § 203(c). It is not disputed that Puerto Rico is a territory. *See generally Harris v. Rosario,* 446 U.S. 651, 651–52, 100 S.Ct. 1929, 64 L.Ed.2d 587 (1980) (finding Congress has power over Puerto Rico under the Territory Clause of the Constitution, U.S. Constit. art. IV, § 3, cl. 2); *Americana of P.R., Inc. v. Kaplus,* 368 F.2d 431, 433–36 (3rd Cir.1966), *cert. denied,* 386 U.S. 943, 87 S.Ct. 977, 17 L.Ed.2d 874 (1967) (providing extensive analysis of Puerto Rico's position under the Territory Clause). The current FLSA language was written in 1974 specifically "to make clear the right of individuals employed by state and local governments and political subdivisions to bring private actions to enforce their rights and recover back wages under [FLSA]" in light of judicial limitations on this right. H.R. Rep. 93–913, at 41 (1974), *reprinted in* 1974 U.S.C.C.A.N. 2811, 2850.

In a series of recent sovereign immunity cases beginning with *Seminole Tribe v. Florida,* 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996), the scope and underpinnings of state sovereign immunity and the Eleventh Amendment[2] have shifted

---

1. It appears to be conceded that the PRFAA shares whatever sovereign immunity Puerto Rico has.

2. Sovereign immunity of the type addressed in this case is often referred to as "Eleventh Amendment immunity." However, the Supreme Court has recently indicated that "sovereign immunity derives not from the Eleventh Amendment but from the structure of the original Constitution itself." *Alden v. Maine,* 527 U.S. 706, 728, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999). In light of this opinion, and the Eleventh Amendment's explicit reference to "states" and not territories, *see* U.S. Const. amend. XI, the general term "sovereign immunity" is most appropriate for this opinion.

dramatically, radically altering prior understandings of the ability of private parties to sue states for monetary damages under federal law. As part of this shift, a number of Circuit courts have ruled that states are immune from wage and overtime suits in federal court under 29 U.S.C. § 216(b). *See, e.g., Mills v. Maine,* 118 F.3d 37, 41–50 (1st Cir.1997); *Raper v. Iowa,* 115 F.3d 623 (8th Cir.1997); *Aaron v. Kansas,* 115 F.3d 813 (10th Cir.1997). It seems a reasonable prediction that the D.C. Circuit would follow this lead, especially in light of *Alden v. Maine,* 527 U.S. 706, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999), holding Maine immune from an overtime suit in *state* court under 29 U.S.C. § 216(b).[3]

The question, then, is whether Puerto Rico enjoys the same sovereign immunity from suits under federal law as the states. The most recent Supreme Court opinion to address the issue explicitly withheld decision. *See Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy,* 506 U.S. 139, 141 n. 1, 113 S.Ct. 684, 121 L.Ed.2d 605 (1993) (noting that First Circuit law that Puerto Rico is a state for Eleventh Amendment purposes had not been challenged and thus declining to rule on the issue). Defendants point out, correctly, that virtually every court that has addressed the issue has found Puerto Rico immune from suit in parallel with the states. With the notable exceptions discussed below, however, the cases declaring this immunity have either simply assumed the existence of immunity or ruled without discussion, citing to a somewhat tangled web of other cases that also provide no discussion. And none of them addresses the specific concerns that arise here, where it is Congress, and not a state or local government, that has created a cause of action that may impose liability upon Puerto Rico or one of its agencies. *See, e.g., Ortiz–Feliciano v. Toledo–Davila,* 175 F.3d 37, 39 (1st Cir.1999) (summary citation to *Metcalf & Eddy, Inc. v. Puerto Rico Aqueduct and Sewer Auth.,* 991 F.2d 935 (1st Cir.1993)); *Metcalf & Eddy, Inc.,* at 939 n. 3 (citation with no discussion to four other cases that also offer no substantial discussion of the point); *Ezratty v. Puerto Rico,* 648 F.2d 770 n. 7 (1st Cir. 1981) (Breyer, J.) (citation with no discussion to two other cases); *Salkin v. Puerto Rico,* 408 F.2d 682, 683 (1st Cir.1969) (assumption that Puerto Rico is covered by "the well established federal deference to the right of a sovereign power to withhold all consent to suit"); *Felix v. Haggerty,* No. 80–1075, 1980 WL 326, at *1 (D.D.C. Oct. 21, 1980) (summary citation to two other cases).

At the bottom of this pile of authorities lies a 1913 Supreme Court case, *People of Porto Rico v. Rosaly y Castillo,* 227 U.S. 270, 33 S.Ct. 352, 57 L.Ed. 507. In *People of Porto Rico,* the Court noted that "aside from the existence of some exception, the government which [Congress in] the organic act established in Porto Rico is of such nature as to come within the general rule exempting a government sovereign in its attributes from being sued without its consent." *Id.* at 273, 33 S.Ct. 352. If

---

**3.** Additionally, in *Kimel v. Florida Bd. of Regents,* 528 U.S. 62, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000), the Court found that states were immune from similar suits in federal court under the Age Discrimination in Employment Act (ADEA), enforced through same provision of FLSA that is at stake here—29 U.S.C. § 216(b). Note that the Equal Pay Act provisions of FLSA present Fourteenth Amendment issues not relevant to general wage and overtime concerns, and may well abrogate state sovereign immunity. *See, e.g., Varner v. Illinois State Univ.,* 226 F.3d 927 (7th Cir. 2000), *cert. denied,* 533 U.S. 902, 121 S.Ct. 2241, 150 L.Ed.2d 230 (2001) (holding that Equal Pay Act validly abrogates state sovereign immunity).

Congress had allowed Puerto Rico to be sued, the Court went on to conclude, such suits would be permissible. *Id.* at 274–77, 33 S.Ct. 352.

What Congress giveth, Congress may take away, fully consistent with the Territory Clause of the Constitution: "The Congress shall have power to dispose of and make all needful rules and regulations respecting the territory or other property belonging to the United States." U.S. Constit. art. IV, § 3, cl. 2. *See also Harris,* 446 U.S. 651, 651–52, 100 S.Ct. 1929, 64 L.Ed.2d 587 (1980) (holding that under the Territory Clause, Congress "may treat Puerto Rico differently from States so long as there is a rational basis for its actions"). There have been many changes since 1913 in Puerto Rico's status and the doctrine of sovereign immunity. However, defendants do not dispute the proposition that Congress has the power to abrogate any sovereign immunity that Puerto Rico may possess with regard to a Congressionally-created cause of action such as FLSA, and that it exercised that power when it amended the FLSA in 1974.

This understanding of Puerto Rico's sovereign immunity as being different from that of the states, and subject to Congressional limitation, is fully consistent with the Supreme Court's recent discussions on the nature of state sovereign immunity in *Alden v. Maine:*

> [A]s the Constitution's structure, its history, and the authoritative interpretations by this Court make clear, the States' immunity from suit is a fundamental aspect of the sovereignty which the States enjoyed before the ratification of the Constitution, and which they retain today (either literally or by virtue of their admission into the Union upon an equal footing with the other States) except as altered by the plan of the Convention or certain constitutional amendments.

527 U.S. at 713, 119 S.Ct. 2240. Given Puerto Rico's history as a territory, and not a state, Puerto Rico cannot be said to have constitutional sovereign immunity. Thus there is no reason to assume that whatever sovereign immunity it might possess is parallel to that of the states or that it is not subject to Congressional restriction under the Territory Clause.

Acknowledging all of the above arguments, defendants continue to maintain that Puerto Rico is immune from the present FLSA suit. They rely for this argument almost exclusively on *Jusino Mercado v. Puerto Rico,* 214 F.3d 34 (1st Cir. 2000), a case that grants Puerto Rico sovereign immunity from private suit under the general wage and overtime provisions of FLSA.

*Jusino Mercado's* holding is grounded in statutes, not the constitution. *Id.* at 44. The opinion relies heavily on the Puerto Rican Federal Relations Act, 48 U.S.C. § 734, for the proposition that "[t]he statutory laws of the United States not locally inapplicable, except as hereinbefore or hereinafter otherwise provided, shall have the same force and effect in Puerto Rico as in the United States . . . ." Additionally, the First Circuit noted that Congress intended Puerto Rico's commonwealth status " 'to accord to Puerto Rico the degree of autonomy and independence normally associated with States of the Union.' " *Jusino Mercado,* 214 F.3d at 42 (quoting *Examining Bd. of Eng'rs, Architects & Surveyors v. Flores de Otero,* 426 U.S. 572, 594, 96 S.Ct. 2264, 49 L.Ed.2d 65 (1976)). Thus, the First Circuit determined that, "long before Congress enacted the relevant provision of FLSA, it had put firmly in place a default rule: statutes of general application would apply equally to Puerto Rico and to the fifty states *unless*

Congress made specific provision for differential treatment." *Id.* (emphasis in original). Alternatively, Puerto Rico could still be treated differently if there were a "compelling reason." *Id.*

So far, so good. But then the First Circuit came face-to-face with the unambiguous language of the 1974 amendments to FLSA that subjected Puerto Rico—and the states—to liability in private lawsuits for monetary damages. 29 U.S.C. § 216(b). The unsatisfying and unpersuasive result was this:

> To sum up, there is absolutely no evidence that Congress intended to treat Puerto Rico differently than the fifty states for purposes of the FLSA's enforcement provision. Nor have the appellants identified any compelling policy reasons that might propel us towards such a result. Hence, in accordance with 48 U.S.C. § 734, we conclude that *the language in the FLSA that courts have deemed insufficient to abrogate states' immunity is equally insufficient to undermine Puerto Rico's immunity.* When Congress provided for suits by individual employees against public agencies "in any Federal or State court of competent jurisdiction," it did not intend for that jurisdiction to encompass suits against Puerto Rico more readily than suits against the states. Indeed, it is inconceivable to us that Congress would have chosen to invoke the Territorial Clause to impose the FLSA on Puerto Rico had it known that it could not impose an equivalent burden on the fifty states.

*Id.* at 44 (emphasis added). Among the many problems with this argument, the most important is the First Circuit's refusal to deal head-on with the *reason* why the 1974 amendments to FLSA have been "deemed insufficient to abrogate states' immunity." The rationale of *Seminole Tribe* and its progeny is grounded in the constitution. The constitution does not limit the power of Congress to abrogate Puerto Rico's sovereign immunity. Instead, it actually empowers Congress to do so. The First Circuit's inability to conceive that Congress would have chosen to impose FLSA on Puerto Rico had it known that it could not do so for the states, and its purported certainty about what Congress meant when it enacted the 1974 amendments, amount to, I respectfully suggest,[4] (i) speculation, (ii) about legislative intent, (iii) in the face of unambiguous statutory language requiring a different result.

■ The standard, traditional canon of severability is that "unless it is evident that the Legislature would not have enacted those provisions which are within its power, independently of that which is not, the invalid part may be dropped if what is left is fully operative as a law." *Alaska Airlines, Inc. v. Brock,* 480 U.S. 678, 684, 107 S.Ct. 1476, 94 L.Ed.2d 661 (1987). Nobody has suggested that "what is left" here—possible liability under FLSA for Puerto Rico, but not for states—is not fully "operative as a law." We may presume that Congress did not in fact anticipate that its power to apply FLSA to the states would be curtailed, but nobody can say how Congress would have shaped the FLSA amendments if it had been so prescient, nor am I free to decide the issue presented here on the basis of my own belief as to what Congress would have done. I can say what Congress did do,

---

4. I accept the defendants' suggestion that deference is owed to the First Circuit's views on sovereign immunity for Puerto Rico, since the First Circuit is the court primarily entrusted with issues relating to Puerto Rico. Rulings of the First Circuit are not binding upon this court, however.

which was permit private law suits for monetary damages against Puerto Rico under FLSA. Congress had the power to do this. It is for Congress, and not this court, to decide, in light of *Seminole Tribe* and its progeny, what to do next.

### Retaliation For Internal Complaints Under FLSA

■ FLSA makes it illegal "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding ...." 29 U.S.C. § 215(a)(3). Plaintiff's complaint alleges that she "repeatedly requested proper payment of her overtime and other wages, but did not receive them," Pltf.'s Compl. ¶ 23, and that she was "terminated shortly after she complained to defendants regarding their failure to properly pay her." *Id.,* ¶ 24.

Defendants, taking the plain language side of the argument in this part of the case, argue that FLSA's anti-retaliation language does not protect employees from retaliation for making internal complaints to an employer about possible FLSA violations. The Second and the Fourth Circuits have sustained that view. *Ball v. Memphis Bar–B–Q Co.,* 228 F.3d 360, 363–65 (4th Cir.2000); *Lambert v. Genesee Hosp.,* 10 F.3d 46, 55 (2nd Cir.1993). Both courts have drawn conclusions favorable to defendants' view of FLSA's narrow language by contrasting it with the much broader language of Title VII of the Civil Rights Act of 1964, 42 U.S.C.2000e *et seq.*

("Title VII"). *Ball,* 228 F.3d at 364; *Lambert,* 10 F.3d at 55.[5] Congress knows how to be broad when it wants to be broad.

Seven other circuits have found that FLSA does bar retaliation for at least some purely internal complaints. *See, e.g., Valerio v. Putnam Associates Inc.,* 173 F.3d 35 (1st Cir.1999); *Brock v. Richardson,* 812 F.2d 121 (3rd Cir.1987); *EEOC v. Romeo Cmty. Schools,* 976 F.2d 985 (6th Cir.1992); *Brennan v. Maxey's Yamaha, Inc.,* 513 F.2d 179 (8th Cir.1975); *Lambert v. Ackerley,* 180 F.3d 997 (9th Cir.1999); *Love v. RE/MAX of America, Inc.* 738 F.2d 383 (10th Cir.1984); *EEOC v. White & Son Enter.,* 881 F.2d 1006, (11th Cir. 1989). These opinions exhibit a range of rationales, but most of them note important Supreme Court decisions indicating that FLSA should not be interpreted too narrowly and stressing the importance of substantive anti-retaliation protection. *See, e.g., Valerio,* 173 F.3d at 41–44; *White & Son Enterprises,* 881 F.2d at 1011–12; *see also Mitchell v. Robert DeMario Jewelry, Inc.,* 361 U.S. 288, 292, 80 S.Ct. 332, 4 L.Ed.2d 323 (1960); *Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123,* 321 U.S. 590, 597, 64 S.Ct. 698, 88 L.Ed. 949 (1944). Those interpretational guides have led those courts to find that FLSA's language does cover internal complaints. *See, e.g., Lambert,* 180 F.3d at 1004 (finding that "filed any complaint" could be interpreted to encompass internal complaints, especially given the common labor practice of "filing" internal grievances with employers).

This issue appears to be one of first impression in the D.C. Circuit. It should not be decided on this record. The narrow

---

5. Under Title VII, it is unlawful "for an employer to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e–3(a).

holdings of the Second and Fourth Circuits are more consistent with FLSA's language, but we do not know enough to apply that language with precision. Plaintiff alleges only that she was fired after complaining to her employer about alleged violations of FLSA. She does not indicate whether or not she filed any complaint with anyone (internal or external), instituted any proceeding, or testified or was about to testify in any proceeding. Since I cannot say that there is no version of the facts upon which plaintiff could prevail on her claim, the prudent course is to allow further development of the record.

\* \* \* \* \* \*

An appropriate order accompanies this memorandum.

## *ORDER*

For the reasons stated in the accompanying memorandum, defendant's motion to dismiss [3] is **denied.**