**F I L E D**
United States Court of Appeals
Tenth Circuit

JUN 17 1997

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

BRADLEY AARON, et al.,

     Plaintiffs-Appellants,

v.

THE STATE OF KANSAS,

     Defendant-Appellee,

No. 96-3095

---

RODNEY LEE ALBRIGHT, et al.,

     Plaintiffs-Appellants,

v.

THE STATE OF KANSAS,

     Defendant-Appellee.

No. 96-3096

---

**Appeal from the United States District Court**
**for the District of Kansas**
**(D.C. No. 91-4213-DES/91-4215-DES)**

---

Patricia E. Riley of Weathers & Riley, Topeka, Kansas, for Plaintiffs-Appellants.

Robert E. North, Kansas Department of Administration, Legal Section, Topeka, Kansas (Daniel J. Gronniger, Kansas Department of Administration, Legal Section, Topeka, Kansas, with him on the brief), for Defendant-Appellee.

Before **WHITE**, Associate Justice (Ret.)[*], **EBEL** and **KELLY**, Circuit Judges.

**EBEL**, Circuit Judge.

The plaintiffs in this action are 340 Kansas highway patrol troopers, 42 Kansas Bureau of Investigation Agents, and 18 Conservation Officers employed by the State of Kansas (the "Plaintiffs"). The Plaintiffs now appeal a bench verdict in favor of the State of Kansas on their wage claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219 (1994). Because we conclude that Seminole Tribe of Florida v. Florida, 116 S.Ct. 1114 (1996) deprives the federal courts of jurisdiction over the Plaintiffs' claims, we DISMISS this appeal and VACATE the judgment below.[1]

_____

[*] The Honorable Byron R. White, Associate Justice of the United States Supreme Court, (Ret.), sitting by designation, pursuant to 28 U.S.C. § 294(a).

[1] The Plaintiffs argue that Seminole Tribe does not apply to this case because they filed suit before Seminole Tribe was decided. We disagree. The Supreme Court held in Harper v. Virginia Dep't of Tax'n, 113 S.Ct. 2510, 2517 (1993) that newly announced rules of federal law must be given full retroactive effect in all cases still open on direct review." This court has applied Seminole Tribe to suits filed before Seminole Tribe was decided. See Hurd v. Pittsburg St. Univ., 109 F.3d 1540, 1542 (10th Cir. 1997).

We note, however, that Seminole Tribe does not require that we vacate the district court's judgment awarding to Plaintiffs back pay and liquidated damages regarding their shift differential and longevity claims. (See Journal Entry of Judgment, February 7, 1996, Docketing Statement, 96-3096, at 515). The Plaintiffs prevailed on those claims below, received a final judgment, and the State has not appealed. Thus, the shift differential and longevity claims are not "still open on direct review." Harper, 113 S.Ct. at 2517.

2

**I.    Discussion**

The Eleventh Amendment to the Constitution reads:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI. Although the text of the amendment addresses only those suits brought against a state by persons who are not citizens of that state, the Supreme Court has interpreted the Eleventh Amendment to extend to all suits brought by individuals against unconsenting states in federal court. Seminole Tribe, 116 S.Ct. at 1122 (citing Hans v. Louisiana, 134 U.S. 1, 13 (1890)). The Eleventh Amendment bar to suit is not absolute, however. States may consent to be sued in federal court and, in certain circumstances, Congress may abrogate the states' sovereign immunity. Here, it is undisputed that Kansas has not consented to suit; thus, the only issue we address is whether Congress has abrogated the states' sovereign immunity with regard to the Plaintiffs' claims.

Congress can abrogate state sovereign immunity only where "Congress has 'unequivocally expressed its intent to abrogate . . . immunity;' and [where] Congress has 'acted pursuant to a valid exercise of power.'" Hurd v. Pittsburg St. Univ., 109 F.3d 1540, 1542 (10th Cir. 1997) (quoting Seminole Tribe, 116 S.Ct. at 1123 (internal citations omitted)). Thus, in determining whether we possess jurisdiction over this action, we must determine whether Congress intended to abrogate the states' sovereign immunity with

regard to claims brought under the FLSA.  Only if Congress expressed such an intent

need we address whether Congress acted pursuant to a valid source of authority.

A.      Intent to Abrogate

This court recognized in a case decided before Seminole Tribe that "Congress

made clear in the FLSA its intention to override the Eleventh Amendment."  Brinkman v.

Dep't of Corrections, 21 F.3d 370, 372 (10th Cir.), cert. denied, 115 S.Ct. 315 (1994)

(citing Reich v. New York, 3 F.3d 581, 590 (2d Cir. 1993), cert. denied, 510 U.S. 1163

(1994)).  Although nothing in Seminole Tribe requires us to revisit the Brinkman

decision, a quick review of the history of the FLSA reveals how Congress expressed its

intent to abrogate the states' Eleventh Amendment immunity with regard to FLSA claims.

In 1973,  the Supreme Court determined that Congress did not intend to abrogate

state immunity from suit in federal court merely by including states within the FLSA's

definition of "employer."  Empl. of the Dep't of Pub. Health & Welfare v. Dep't of Pub.

Health & Welfare, 411 U.S. 279, 285 (1973).  In response, and, to make clear its intent to

abrogate the states' Eleventh Amendment immunity, Congress amended the FLSA in

1974 to provide that an action "may be maintained against any employer (including a

public agency) in *any Federal or State court* of competent jurisdiction . . . ." 29 U.S.C.

§ 216(b) (1994) (as amended in 1974) (emphasis added).  In addition, "employer" was

amended to include "any person acting directly or indirectly in the interest of an employer

in relation to an employee and includes a public agency," 29 U.S.C. § 203(d) (1994) (as

4

amended 1974), where "public agency" includes "the Government of the United States; the government of a State or political subdivision thereof; any agency of . . . a State; or a political subdivision of a State; or any interstate governmental agency." 29 U.S.C. § 203(x) (1994) (as amended 1974). Finally, "[t]he FLSA defines an employee to include 'in the case of an individual employed by a public agency, . . . any individual employed by a State, political subdivision of a State, or an interstate governmental agency . . . .'" Brinkman, 21 F.3d at 372 (quoting 29 U.S.C. § 203(e)(2)(C)).

The FLSA's extension of liability to states, coupled with its provision allowing suits in federal court, make clear Congress' intent to abrogate the states' Eleventh Amendment immunity with regard to claims brought under the FLSA. Indeed, the House Report on the 1974 amendments indicates that the amendment allowing actions to be maintained in a federal or state court was "intended to overcome that part of the decision of the Supreme Court in Employees of the Department of Public Health v. Missouri, [411 U.S. 279 (1973)] which stated that Congress had not explicitly provided in enacting the 1966 amendments that newly covered State and local employees could bring an action against their employer in a Federal court under [29 U.S.C. § 216]." H.R. Rep. No. 93-913, at 43, *reprinted in* 1974 U.S.C.C.A.N. 2811, 2853.

B.      Power to Abrogate

We now turn to the issue of whether the 1974 amendments were passed "pursuant to a valid exercise of power." Seminole Tribe, 116 S.Ct. at 1124 (quoting Green v. Mansour, 474 U.S. 64, 68 (1985)).

Prior to Seminole Tribe, the Supreme Court had recognized two sources of authority through which Congress could validly abrogate the states' sovereign immunity: the interstate commerce clause, Pennsylvania v. Union Gas Co., 491 U.S. 1 (1989), and Section Five of the Fourteenth Amendment, Fitzpatrick v. Bitzer, 427 U.S. 445, 456 (1976). In Seminole Tribe, however, the Supreme Court overruled Union Gas and determined that the interstate commerce clause does not provide Congress with the authority to abrogate a state's Eleventh Amendment immunity. 116 S.Ct. at 1128. The Fourteenth Amendment remains a valid source of authority for Congress to abrogate the states' sovereign immunity, however. Id.

We believe that Congress acted pursuant to the interstate commerce clause in attempting to abrogate state sovereignty with regard to FLSA claims. Congress declared when it enacted the FLSA in 1938 that it was "exercis[ing] . . . its power to regulate commerce among the several States . . . ." 29 U.S.C. § 202(b). Indeed, any second-year law student knows that it was matter of Constitutional moment in this country when the

6

Supreme Court upheld the FLSA against constitutional challenge as a valid exercise of Congress's commerce power in United States v. Darby, 312 U.S. 100, 115 (1941).[2]

Nonetheless, the Plaintiffs argue that Congress enacted the 1974 amendments to the FLSA pursuant to Section Five of the Fourteenth Amendment and thus Congress properly abrogated the states' Eleventh Amendment immunity. We disagree.

As discussed earlier, Congress amended the FLSA in 1974 to allow state employees to seek existing FLSA protections in federal court. Nowhere in the 1974 amendments does Congress declare that it is acting pursuant to the Fourteenth Amendment. Indeed, the legislative history of the 1974 amendments indicates that the

---

[2] Neither can the Plaintiffs argue that the 1961 and 1966 amendments to the FLSA were not enacted pursuant to the Interstate Commerce Clause. In 1961, Congress extended the protection of the FLSA from employees "individually connected to interstate commerce," Maryland v. Wirtz, 392 U.S. 183, 186 (1968), overruled on other grounds, 426 U.S. 833 (1976), to "employees of any 'enterprise' engaged in commerce or production for commerce, provided the enterprise also falls within certain listed categories." Id. (citing 29 U.S.C. §§ 203, 206, 207 (1964 ed., Supp. II)). The Senate Report for the 1961 amendments indicates that the amendments, "like the original act, rel[y] on engagement in 'commerce' or in the 'production of goods for commerce' to establish a firm constitutional base for the legislation under the commerce power." S. Rep. No. 87-145, at 43, *reprinted in* 1961 U.S.C.C.A.N. 1620, 1662.
    In 1966, Congress broadened the list of covered categories to include state-owned schools, hospitals, nursing homes, and mental institutions. Wirtz, 392 U.S. at 187 (citing 80 Stat. 831, 29 U.S.C. § 203(d) (1964 ed., Supp. II)). Like the 1961 amendments, the 1966 amendments were "accomplished without departing from the act's basic coverage concepts: employment in 'commerce' or in the 'production of goods for commerce.'" S. Rep. No. 89-1487, at 5, *reprinted in* 1966 U.S.C.C.A.N. 3002, 3006.
    Indeed, the Wirtz Court upheld both the 1961 and 1966 amendments against a constitutional challenges by determining that the amendments were within Congress' power under the Interstate Commerce Clause. 392 U.S. at 188.

amendments were enacted by Congress through the exercise of its power to regulate interstate commerce. The legislative history of the 1974 amendments reveals that Congress sought to eradicate more fully the burdens on commerce caused by substandard labor conditions by expanding the FLSA's coverage. The House Committee Report on the 1974 amendments explains that the amendments "seek[] to implement the policy of Act," H.R. Rep. No. 93-913, at 2, *reprinted in* 1974 U.S.C.C.A.N. 2811, 2812, after indicating that the policy of the FLSA is contained in the following language of the FLSA concerning the burdens on commerce caused by substandard labor conditions:

> (a)     The Congress hereby finds that the existence, in industries engaged in commerce or in the production of goods for commerce, of labor conditions detrimental to the maintenance of the minimum standards of living necessary for health, efficiency, and general well-being of workers (1) causes commerce and the channels and instrumentalities of commerce to be used to spread and perpetuate such labor conditions among the workers of the several States; (2) burdens commerce and the free flow of goods in commerce; (3) constitutes an unfair method of competition in commerce; (4) leads to labor disputes burdening and obstructing commerce and the free flow of goods in commerce; and (5) interferes with the orderly and fair marketing of goods in commerce.
>
> (b)     It is hereby declared to be the policy of this Act, through the exercise by Congress of its power to regulate commerce among the several States and with foreign nations, to correct and as rapidly as practicable to eliminate the conditions above referred to in such industries without substantially curtailing employment or earning power.

Id., at 1-2 (quoting Section 2, Fair Labor Standards Act of 1938; *as codified in* 29 U.S.C. § 202). Thus, it appears clear that the 1974 amendments were enacted pursuant to the Interstate Commerce Clause, and not Section 5 of the Fourteenth Amendment.

8

The Plaintiffs argue that even if Congress did not expressly rely upon the Fourteenth Amendment in its 1974 amendments to the FLSA, the expansion of FLSA protection to state employees serves a Fourteenth Amendment purpose by eliminating arbitrary discrimination. We refuse to impute this purpose to Congress.

The Supreme Court has admonished that "'we should not quickly attribute to Congress an unstated intent to act under its authority to enforce the Fourteenth Amendment.'" Gregory v. Ashcroft, 501 U.S. 452, 469 (1991) (quoting Pennhurst State Sch. & Hosp. v. Halderman, 451 U.S. 1, 16 (1981)). In heeding this admonition, we agree with the Sixth Circuit's conclusion that "if Congress does not explicitly identify the source of its power as the Fourteenth Amendment, there must be something about the act connecting it to recognized Fourteenth Amendment aims" before it is appropriate to characterize legislation as passed pursuant to the Fourteenth Amendment. Wilson-Jones v. Caviness, 99 F.3d 203, 210 (6th Cir. 1996), modified on other grounds, 107 F.3d 358 (6th Cir. 1997) (per curiam).

Here, the Plaintiffs seek relief under the wage and overtime provisions of the FLSA and "there is no sufficiently strong logical connection between the aim of the [wage and overtime provisions of the act] -- to increase the wages and shorten the hours of certain employees -- and central, obvious Fourteenth Amendment concerns." Id. Indeed, every court that has considered the issue has determined that Seminole Tribe precludes the federal courts from hearing wage and overtime claims brought under the

9

FLSA by a citizen against its state. See Moad v. Arkansas St. Police Dep't, 111 F.3d 585, 587 (8th Cir. 1997); Wilson-Jones, 99 F.3d at 211; Whalen v. Arizona, ___ F. Supp. ___, No. CIV-95-1960-PHX-ROS, 1997 WL 220222, at *3 (D. Ariz. May 1, 1997); Palotai v. Univ. of Maryland College Park, 959 F. Supp. 714, 718 (D. Md. 1997); Digiore v. Illinois, ___ F. Supp. ___, No. 96C1785, 1997 WL 159462, at *7 (N.D. Ill. Mar. 27, 1997); Bergemann v. Rhode Island, 958 F. Supp. 61, 64 (D.R.I. 1997); Biddlecome v. Univ. of Texas, No. CIV.A. 96-1872, 1997 WL 124220, at *4-5 (S.D. Tex. Mar. 13, 1997); Frazier v. Courter, 958 F. Supp. 252, 253-54 (W.D. Va. 1997); Adams v. Kansas, 934 F. Supp. 371, 372 (D. Kan. 1996); Blow v. Kansas, 929 F. Supp. 1400, 1402 (D. Kan. 1996); Close v. New York, No. 94-CV-0906, 1996 WL 481550, at *4 (N.D.N.Y. 1996) (unpublished memorandum-decision and order); Taylor v. Virginia, 951 F. Supp. 59, 6001 (E.D. Va. 1996); Raper v. Iowa, 940 F. Supp. 1421, 1426 (S.D. Iowa 1996); Rehberg v. Dep't of Public Safety, 946 F. Supp. 741, 743 (S.D. Iowa 1996); Am. Fed'n of St., County and Mun. Emp. v. Virginia, 949 F. Supp. 438, 442 (W.D. Va. 1996); Mills v. Maine, No. CIV. 92-410-P-H, 1996 WL 400510, at *1 (D. Me. July 3, 1996) (unpublished order); Chauvin v. Louisiana, 937 F. Supp. 567, 570 (E.D. La. 1996).

We do not hold today that the federal courts are precluded from hearing all claims brought by a citizen against its state under the FLSA. For example, the Sixth Circuit has determined that the provisions of the FLSA added by the Equal Pay Act of 1963 and aimed at ensuring that women receive the same pay as men for the same work address

10

core Fourteenth Amendment concerns of prohibiting invidious discrimination; thus, Congress has the authority to abrogate the states' sovereign immunity under the Equal Pay Act. Timmer v. Mich. Dep't of commerce, 104 F.3d 833, 842 (6th Cir. 1997). However, that issue is not before us in this case, and we do not decide it.

Moreover, our holding today does not permit states to avoid their legal duty to comply with the wage and overtime provisions of the FLSA, nor does our holding deny recourse for a state employee denied his or her FLSA rights. There are at least two possible avenues of relief that an employee may pursue without Eleventh Amendment impediment. First, the employee can sue in state court for money damages under the FLSA as a state court of general jurisdiction is obligated by the Supremacy Clause to enforce federal law. Employees, 411 U.S. at 298 (Marshall, J., concurring); accord 16B Charles Alan Wright, et al., Federal Practice and Procedure § 4024, at 360 (2d ed. 1996) (citing Second Employers' Liability Cases, 223 U.S. 1 (1912)).[3] Second, there is no Eleventh Amendment obstacle to the FLSA's provision authorizing the Secretary of Labor to bring suits on behalf of state employees in federal court for money damages,

---

[3] We note that the Kansas courts appear willing to hear FLSA claims brought against the state. See Alexander v. Adjutant General's Office, 858 P.2d 1222, 1226 (Kan. Ct. App. 1993) (deciding with regard to a wage and overtime claim brought by Kansas firefighters that "the State meets the requirements for the firefighter exemption from the FLSA . . . .").

where any sums recovered are paid directly to the state employees who are owed wages. See 29 U.S.C. § 216(c) (1997 Supp.).[4]

## III.   Conclusion

We hold that Congress did not act pursuant to a valid exercise of federal power when it purported to abrogate the states' sovereign immunity with regard to wage and overtime claims brought under the FLSA.  Therefore, we hold that  the federal courts do not have subject matter jurisdiction over the Plaintiffs' claims.  Accordingly, this appeal is DISMISSED, and the judgment of the district court is VACATED, except for those portions of the district court order which have become final because no appeal was taken as to such portions.

---

[4]  The Sixth Circuit has suggested that an employee may also seek an injunction pursuant to Ex parte Young in federal court.  Wilson-Jones, 99 F.3d at 211.  The Sixth Circuit, apparently, did not consider the fact that the FLSA provides a detailed remedial scheme which expressly provides that "the Secretary of Labor shall bring all actions . . . to restrain violations of this chapter."  29 U.S.C. § 211(a) (1994).  See Seminole Tribe, 116 S. Ct. at 1132-33.  We decline to consider the appropriateness of an Ex parte Young remedy in this context.