Denise **CHAVEZ**, **Plaintiff–Appellee,**

**United States of America, Intervenor,**

v.

**ARTE PUBLICO PRESS; Nicolas Kanellos; University of Houston, Defendants–Appellants.**

No. 93–2881.

United States Court of Appeals, Fifth Circuit.

April 20, 1998.

Kenneth E. Kuffner, Kuffner & Associates, David Michael Gunn, Holman, Hogan, Dubose & Townsend, Jeffrey Lowell Streets, Houston, TX, for Chavez.

Michael Eugene Robinson, Mark Bernard Stern, U.S. Dept. of Justice, Civil Div., Appellate Staff, Robert V. Zener, Washington, DC, for Intervenor.

Patrick J. Feeney, Austin, TX, John Russel Feather, Bush, Moseley, Riddle & Jackson, Houston, TX, for Defendants–Appellants.

Charles J. Sanders, New York City, Carey R. Ramos, Peter L. Felcher, Stephanie A. Gore, Paul, Weiss, Rifkind, Wharton & Garrison, Jon Alan Baumgarten, Charles S. Sims, Prokaver, Rose Goetz & Mendelsohn, New York City, for Ass'n of American Publishers, Inc., The Authors Guild, Inc., Ass'n of American University Presses, Inc., The Nat. Music Publishers Ass'n, Inc. and Software Publishers Ass'n.

Christopher Allan Meyer, Michael R. Klipper, Meyer & Klipper, Washington, DC, for American Soc. of Composers, Authors and Publishers, Broadcast Music, Inc., Business Software Alliance, Inc., Information Industry Ass'n, Motion Picture Ass'n of America, Inc. and Recording Industry Ass'n of America.

Charles L. Gholz, Oblon, Spivak, McClelland, Maier & Neustadt, Arlington, VA, for American Intellectual Property Law Ass'n.

Martin H. Redish, Northwestern School of Law, Chicago, IL, for International Trademark Ass'n.

Before WISDOM, JONES and EMILIO M. GARZA, Circuit Judges.

## ON REMAND FROM THE UNITED STATES SUPREME COURT

### EDITH H. JONES, Circuit Judge:

This Copyright/Lanham Act case was remanded from the Supreme Court for reconsideration in light of its decision in *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996). The issue is whether Congress properly exercised authority to subject states to suit in federal court for violation of those statutes. *See* 15 U.S.C. § 1122; 17 U.S.C. §§ 501, 511. Plaintiff Chavez asserts that the University of Houston infringed her copyright by continuing to publish her book without her consent and violated the Lanham Act by naming her, also without her permission, as the selector of plays in another book it published. The University of Houston contends that because it enjoys immunity from unconsented-to suit in federal court under the Eleventh Amendment, the case must be dismissed.[1] This time, we agree with the University.

▪ Abrogation of a state's Eleventh Amendment immunity turns on an express statement of intent by Congress and a constitutionally valid exercise of power. *See Seminole*, 517 U.S. at 55–56, 116 S.Ct. at 1123. Congress recently amended both the Lanham Act and Copyright Act and explicitly required states to submit to suit in federal court for violation of their provisions;[2] thus, the express statement requirement is fulfilled. The remaining, still troubling question is whether Congress had power to compel states to surrender their Eleventh Amendment immunity for these purposes.

In our previous opinion, we concluded that the Supreme Court's variegated jurisprudence supported the theory that the University of Houston impliedly waived Eleventh Amendment immunity because the University chose to enter into a contract with Chavez and use her name after Congress had imposed statutory waivers in the Copyright and Lanham Acts. The state's price of doing business in those areas included the possibility of suit in federal court. This conclusion derived from our understanding of the *Parden* theory of implied waiver of state sovereign immunity. *See Parden v. Terminal Ry. of Ala. State Docks Dept.*, 377 U.S. 184, 84 S.Ct. 1207, 12 L.Ed.2d 233 (1964).

Chavez and numerous *amici* who filed post-remand briefs contend that the *Parden* implied waiver theory survived *Seminole*, and, alternatively, that the provisions in question validly implement congressional power under section 5 of the Fourteenth Amendment. No party now asserts, in light of *Seminole*, that Congress could statutorily abrogate Eleventh Amendment immunity pursuant to its constitutional powers to regulate commerce or copyrights under Article I, Section 8.[3] Although Chavez's theories are weighty, we find them unpersuasive.

### I. The Status of *Parden*.

▪ It would be superfluous to recount this panel's previous discussion of pre-*Seminole* cases. Suffice it to summarize that *Parden*, in historical context, seemed to imply that a state impliedly consented to suit in

---

1. This court's disposition of the other issues between the parties is unaffected by the Supreme Court's remand.

2. *See* Trademark Remedy Clarification Act, Pub.L. No. 102–542, 106 Stat. 3567 (1992) (codified at 15 U.S.C. §§ 1122, 1125(a)); Copyright Remedy Clarification Act, Pub.L. No. 101–553, 104 Stat. 2749 (1990) (codified at 17 U.S.C. §§ 501(a), 511).

3. The constitutional source of interstate trademark regulation, which includes portions of 15 U.S.C. § 1125(a), is the Commerce Clause. *See* 13B Charles A. Wright, Arthur R. Miller, Edward H. Cooper, *Federal Practice and Procedure* § 3582, at 314 (1984).

federal court when it undertook non-sovereign activities in areas regulated by the federal government. Seizing on our conclusion, Chavez points out that *Seminole* cites *Parden* as "a case holding the unremarkable, and completely unrelated, proposition that the States may waive their sovereign immunity." *Seminole*, 517 U.S. at 63, 116 S.Ct. at 1128 (citing *Parden*). This language, embedded in a critique of the reasoning in the *Union Gas* decision,[4] is interpreted by Chavez as a reaffirmation of *Parden*. *Parden* held that when the State of Alabama undertook to operate a railroad, it did so subject to the Federal Employees Liability Act, which permits suit against interstate railroads in federal court, and thus waived its Eleventh Amendment immunity. Chavez reads the reference in *Seminole* to approve *Parden* for the proposition that when a state conducts business in an area subject to federal regulation, and the federal government has expressly conditioned participation in that business on a waiver of Eleventh Amendment immunity, the state's conduct effectuates such a waiver. This is in fact the interpretation of *Parden* used by this court in our previous opinion to explain Justice White's respective positions in *Parden* and in *Union Gas. See Chavez v. Arte Publico Press*, 59 F.3d 539, 545–46 (5th Cir.1995) [hereinafter *Chavez I* ].

Whether this interpretation fairly reflects *Seminole*, however, is another matter. *Seminole* cites *Parden* only for the statement that "states may waive their sovereign immunity," which is a matter of hornbook law analytically separate from congressional overruling of state sovereign immunity. *Seminole* quashed the latter proposition when it unequivocally overturned *Union Gas:*

> [B]oth the result in *Union Gas* and the plurality's rationale depart from our established understanding of the Eleventh Amendment and undermine the accepted function of Article III. We feel bound to conclude that *Union Gas* was wrongly decided and that it should be, and now is, overruled.

*Seminole*, 517 U.S. at 66, 116 S.Ct. at 1128. The Court necessarily disavowed not only the

*Union Gas* plurality reasoning (the "plan of the convention" theory of Eleventh Amendment waiver), but also Justice White's fifth vote in favor of the *Union Gas* result. Justice White's *Union Gas* concurrence, we inferred in the previous opinion, had to be based on the *Parden* theory of implied waiver. We cannot understand how the Court could have overruled *Union Gas* only in regard to the 4–vote plurality opinion and not *in toto,* and we do not believe it attempted such a feat.

For other reasons, *Seminole* suggests that the *Parden* implied waiver theory has been rejected. First, *Seminole* expressly incorporates much of the reasoning of Justice Scalia's dissent in *Union Gas,* a dissent agreed upon by the same members of the Court who formed the core of the *Seminole* majority. Justice Scalia's dissent explicitly criticizes and describes the sleight of hand involved in the *Parden* implied waiver theory:

> [T]o acknowledge that the Federal Government can make the waiver of state sovereign immunity a condition to the State's action in a field that Congress has authority to regulate is substantially the same as acknowledging that the Federal Government can eliminate state sovereign immunity in the exercise of its Article I powers—that is, to adopt the very principle [abrogation of state sovereignty] I have just rejected.

*Union Gas,* 491 U.S. at 44, 109 S.Ct. at 2304 (Scalia, J., concurring in part and dissenting in part). As Scalia explained,

> *all* federal prescriptions are, insofar as their prospective application is concerned, in a sense conditional, and—to the extent that the objects of the prescriptions consciously engage in the activity or hold the status that produces liability—can be redescribed as invitations to "waiver."

*Id.* at 43, 109 S.Ct. at 2303 (emphasis in original). Scalia concludes, "If state sovereign immunity has any reality, it must mean more than this." *Id.* at 44, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45.

Second, *Seminole* reaches the broad conclusion that:

---

4. *See Pennsylvania v. Union Gas Co.,* 491 U.S. 1, 109 S.Ct. 2273, 105 L.Ed.2d 1 (1989).

Even when the Constitution vests in Congress complete lawmaking authority over a particular area, the Eleventh Amendment prevents Congressional authorization of suits by private parties against unconsenting states. The Eleventh Amendment restricts the judicial power under Article III, and Article I cannot be used to circumvent the constitutional limitations placed upon federal jurisdiction.

*Seminole*, 517 U.S. at 72–73, 116 S.Ct. at 1131–32 (footnote omitted). In the footnote accompanying this holding, the Court comments on Justice Stevens's criticism that *Seminole* will prohibit federal jurisdiction over suits to enforce the bankruptcy, copyright, and antitrust laws against the states and that there would consequently be "no remedy" for state violations of those federal statutes. *See id.* at 73 n. 16, 116 S.Ct. at 1131 n. 16. The footnote does not rule out, though it would have been improper to rule on, Justice Stevens's fears. It does, however, observe the novelty of the proposition that any of those statutory schemes abrogated the states' sovereign immunity. It also lists other remedies available to redress state violations of federal law. At the very least, this footnote can give no comfort to those who contend that the *Parden* implied waiver theory permits all suits in federal court against unconsenting states founded on the Copyright or Lanham Acts.

■ A fair reading of *Seminole* inescapably suggests that we must "drop the other shoe"[5] and declare that Congress cannot condition states' activities that are regulable by federal law upon their "implied consent" to being sued in federal court. The express provisions of the Copyright and Lanham Acts that purport to require the contrary are outside of Congress's power under Article I.

This conclusion does not amount to a presumptuous, premature overruling of Supreme Court precedent, which we are forbidden to do. *See Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477, 484, 109 S.Ct. 1917, 1921–22, 104 L.Ed.2d 526 (1989) ("If a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions."). The Supreme Court's precedents had already expressly overruled several implications of *Parden* even before *Seminole* was decided.[6] We believe *Parden* remains viable precisely to the extent found "unremarkable" in *Seminole*—that a state may waive its Eleventh Amendment immunity from suit.[7]

## II. Section 5 of the Fourteenth Amendment.

■ The other argument pursued by Chavez and *amici* is that Congress validly exercised its legislative power pursuant to section 5 of the Fourteenth Amendment, because the state court "deprived" Chavez of her "property" without "due process of law" when it violated the Lanham and Copyright Acts. *Seminole* reaffirmed that Congress can abrogate the states' sovereign immunity when acting pursuant to section 5 of the Fourteenth Amendment. *See Seminole*, 517 U.S. at 63–66, 116 S.Ct. at 1128 (citing *Fitzpatrick v. Bitzer*, 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976)). This is because "the Fourteenth Amendment, adopted well after the adoption of the Eleventh Amendment and the ratification of the Constitution, operated to alter the pre-existing balance between state and federal power achieved by Article III and the Eleventh Amendment." *Id.*

5. *Union Gas*, 491 U.S. at 43, 109 S.Ct. at 2303 (Scalia, J., concurring in part and dissenting in part).

6. *See Chavez I*, 59 F.3d at 542–46.

7. The Third Circuit, in a related type of case, found any similar discussion of *Parden* irrelevant to its decision, as it believed the state college loan program charged with false advertising under the Lanham Act represented a "core govern-

ment function" and not voluntary participation in the marketplace, like Alabama's running a railroad in *Parden*. *See College Savings Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 131 F.3d 353, 364–65 (3d Cir.1997). One could contend that the University of Houston's publishing house is also, under the *College Savings Bank* rationale, intimately related to the core government function of education.

To examine this argument, we assume for present purposes that Congress expressly relied on the Fourteenth Amendment not only when it enacted the Trademark Remedy Clarification Act, but also the Copyright Remedy Clarification Act.[8] Congress can enact legislation under section 5 of the Fourteenth Amendment which embraces any right guaranteed by the Due Process Clause. *See City of Boerne v. Flores,* — U.S. —, — – —, 117 S.Ct. 2157, 2163–64, 138 L.Ed.2d 624 (1997) (citing *United States v. Price,* 383 U.S. 787, 789, 86 S.Ct. 1152, 1154, 16 L.Ed.2d 267 (1966)). Congress's power under section 5, however, is "remedial" and designed to enforce the provisions of the Fourteenth Amendment, not to "decree the substance of the Fourteenth Amendment's restrictions on the States." *Id.* at —, 117 S.Ct. at 2164. To paraphrase *City of Boerne,* legislation which alters the meaning of the Due Process Clause cannot be said to be enforcing the Clause. *See id.*

Viewed in light of *Seminole* and *City of Boerne,* Chavez's syllogisms are too facile. Her position is that the copyright contract and her interest in not having her name misappropriated are "property" under the Fourteenth Amendment; the state's breach of contract and misappropriation of her name "deprived her" of property; and since the deprivations were uncompensated, they occurred without due process of law. Finally, because the state "violated" the Due Process Clause, Congress was authorized to abrogate its Eleventh Amendment immunity under section 5 of the Fourteenth Amendment.

Even the first step of Chavez's argument, her claim of property interests protected by the Fourteenth Amendment, is uncertain. While Chavez's statutorily-created right to protect her name from misappropriation is assured by the Lanham Act,[9] this intangible right is not a "property right" protected against the states by the Fourteenth Amendment. In *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), the Supreme Court essentially so held when it concluded that violations of reputational interests by the state are not cognizable under the Due Process Clause. *See id.* at 711, 96 S.Ct. at 1165 ("[B]ut the interest in reputation alone which respondent seeks to vindicate in this action in federal court is quite different from the 'liberty' or 'property' recognized in those [other Supreme Court] decisions.")

In a similar vein, the Third Circuit recently held that a Lanham Act claim for a business's misrepresentation of its own goods and services does not rise to the level of a constitutional tort under the Due Process Clause. Consequently, the court held that Congress did not have power under *Seminole* to subject the states to suit in federal court for violation of that prong of the Lanham Act. *See College Savings Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.,* 131 F.3d 353, 358–62 (3d Cir.1997).[10]

Chavez's breach of copyright action against the University of Houston raises "property" problems on several levels. Copyrights are indeed a species of property, but the extent to which they are protectable against the states raises troubling issues. In

---

**8.** The U.S.Code Congressional and Administrative News states that the Trademark Remedy Clarification Act was passed in part pursuant to the Fourteenth Amendment. *See* S.Rep. No. 280, 102d Cong., 2d Sess., at 13–15 (1992). The Copyright Remedy Clarification Act does not expressly rely on section 5 of the Fourteenth Amendment. *See* H.R.Rep. No. 282, 101st Cong., 1st Sess. (1989). It may be too much of a leap to infer Congress's reliance on the Fourteenth Amendment in the copyright amendments when it did not expressly state its intent to legislate on that basis. *See Pennhurst State Sch. and Hosp. v. Halderman,* 451 U.S. 1, 16, 101 S.Ct. 1531, 1539, 67 L.Ed.2d 694 (1981). *But see EEOC v. Wyoming,* 460 U.S. 226, 243 n. 18, 103 S.Ct. 1054, 1064 n. 18, 75 L.Ed.2d 18 (1983).

See generally *Timmer v. Michigan Dept. of Commerce,* 104 F.3d 833, 845–46 (Boggs, J., concurring in part and dissenting in part). But the result is the same either way.

**9.** *See Waits v. Frito–Lay, Inc.,* 978 F.2d 1093 (9th Cir.1992); *Better Business Bureau of Metro. Houston, Inc. v. Medical Directors, Inc.,* 681 F.2d 397 (5th Cir.1982).

**10.** *College Savings Bank* carefully limited its holding to the facts before it, and did not express an opinion on the status under *Seminole* of claims for trademark infringement or misrepresentation of a competitor's goods and services. *See id.* at 362.

*Seminole*, the Supreme Court noted the absence of caselaw authority over the past 200 years dealing with enforcement of copyrights in federal courts against the states.[11] Surely this dearth implies that there has been no claim against states in the federal courts. Nevertheless, one court of appeals has held that an interest in a copyright is protected by the Due Process and Just Compensation Clauses of the Constitution. *See Roth v. Pritikin*, 710 F.2d 934, 939 (2d Cir.1983). *Roth*, however, did not consider the situation before us, an infringement claim against a state. In *Roth*, the Second Circuit was speculating on the entirely different issue of Congress's inability to retroactively invalidate by statute certain pre-existing copyright contracts between private parties. Only slightly more appropos of this discussion, the Supreme Court affirms that trade secrets are property protected by the Fifth Amendment takings clause. *See Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1002–03, 104 S.Ct. 2862, 2872–73, 81 L.Ed.2d 815 (1984). By analogy, copyrights constitute intangible property that, for some purposes at least, receives constitutional protection.

The problem at hand can be further refined by noting that in many cases an owner's copyright will be licensed by means of a contract with the state. Breach of the contract might give rise to remedies in contract as well as infringement, perhaps even affording a choice of remedy to the copyright owner.[12] Although Chavez, for instance, chose to sue for infringement against the University of Houston, her petition suggests that alternative contract claims may have existed.

Where the claim asserted is breach of a contract concerning a copyright, certain consequences follow. First, such claims have been held not to "arise under" the nation's copyright laws for purposes of federal jurisdiction. *See* 28 U.S.C. § 1338; 13B Wright, *supra*, § 3582; 3 Nimmer & Nimmer, *supra*,

§ 12.01[A][1][a]. The ground for such decisions is that a contract case concerning a copyright (or patent) license does not involve construction or adjudication of federal laws and should be left to resolution under state contract law.

Second, even if the interpretation of a contract concerning a copyright arises under federal law, courts have generally held that a state's breach of a contract does not constitute a procedural due process violation cognizable by a § 1983 action in federal court.[13] Courts have been reluctant to federalize ordinary breach of contract suits against the states. *See S & D Maintenance Co. v. Goldin*, 844 F.2d 962, 966–67 (2d Cir.1988). Our research discloses no ordinary breach of contract case that has been allowed to proceed in federal court against a state. There is no obvious reason why contracts concerning copyrights should be treated differently for these purposes, particularly considering the federalism concerns expressed by the "arising under" line of copyright jurisdiction cases.

Thus, all signs point to the existence of a remedy against the states for breach of contracts involving copyrights in state court. The logic of *City of Boerne*, which counsels against reading statutory language to expand the substantive protections of the Bill of Rights, also militates against Chavez's reading of the Trademark Remedy and Copyright Remedy Clarification Acts. Those provisions would be expanding, rather than merely remedying, violations of procedural due process if they abrogate states' Eleventh Amendment immunity against copyright contract suits.

A separate problem besets the contention that a copyright infringement claim is property protected by the Due Process Clause; the claim proves too much. If it rests on the uniqueness of the property interest created by federal law, which is the source of Chavez's copyright, then it is a direct end-run

11. *See Seminole*, 517 U.S. at 73 n. 16, 116 S.Ct. at 1131 n. 16.

12. *See* 3 M. Nimmer & D. Nimmer, *Nimmer on Copyright* § 10.15[A] (1997).

13. *See Reich v. Beharry*, 883 F.2d 239, 242 (3d Cir.1989) (collecting cases); *Yatvin v. Madison*

*Metro. Sch. Dist.*, 840 F.2d 412, 416 (7th Cir. 1988); *Jett v. Dallas Ind. Sch. Dist.*, 798 F.2d 748, 754 n. 3 (5th Cir.1986), *aff'd in part*, 491 U.S. 701, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989); *Casey v. Depetrillo*, 697 F.2d 22 (1st Cir.1983) (panel including Breyer, J.).

around *Seminole*'s holding that Article I powers may not be employed to avoid the Eleventh Amendment's limit on the federal judicial power. Congress could easily legislate "property" interests and then attempt to subject states to suit in federal court for the violation of such interests. This end-run is just as possible under a liberal interpretation of the Due Process Clause of the Fourteenth Amendment as it was under theories of Article I rejected by the Court in *Seminole.* As the Third Circuit stated in a related context:

> If a state's conduct impacting on a business always implicated the Fourteenth Amendment, Congress would have almost unrestricted power to subject states to suit through the exercise of its abrogation power. Congress could pass any law that tangentially affected the ability of businesses to operate and then create causes of action against the states in federal court if they infringed on those federally created rights. This result would be unacceptable and would conflict directly with the strict limits on Congress's powers to abrogate a state's Eleventh Amendment immunity.

*College Savings Bank,* 131 F.3d at 361. Chavez and her *amici* have offered no distinction, and we perceive none, between her copyright infringement claim and any other tangible or intangible interests that could give rise to Eleventh Amendment abrogation provisions in this way.

Chavez also asserts that the University's actions deprived her of property without substantive due process. In modern judicial history, substantive due process has had nothing to do with property rights claims, and we are not about to extend this judicially-created doctrine simply to assure private parties of a remedy against unconsenting states in federal court. Perhaps this contention is a careless afterthought of the appellant and *amici.*

The conclusion that section 5 of the Fourteenth Amendment does not embrace congressional enforcement of the copyright and Lanham acts is consistent with the trend of post-*Seminole* decisions. Thus far, only federal statutes that enforce the Equal Protection Clause have been held to permit suits against unconsenting states. *See, e.g., Crawford v. Davis,* 109 F.3d 1281 (8th Cir.1997) (Title IX); *Timmer v. Michigan Dept. of Commerce,* 104 F.3d 833 (6th Cir.1997) (Equal Pay Act). Statutes that enforce the Commerce and Bankruptcy Clauses, on the other hand, have not been found to represent exercises of Congress's Fourteenth Amendment remedial power. *See In re Creative Goldsmiths of Washington, D.C., Inc.,* 119 F.3d 1140 (4th Cir.1997) (holding that bankruptcy jurisdiction is not within section 5 of the Fourteenth Amendment); *Mills v. Maine,* 118 F.3d 37 (1st Cir.1997) (FLSA); *Aaron v. Kansas,* 115 F.3d 813 (10th Cir. 1997) (FLSA); *Wilson–Jones v. Caviness,* 99 F.3d 203 (6th Cir.1996) (holding that the FLSA is not within the purview of section 5 of the Fourteenth Amendment). *But see College Savings Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.,* 948 F.Supp. 400 (D.N.J.1996) (holding that a patent is "property" for purposes of the Fourteenth Amendment and that "remedial" legislation abrogating state sovereign immunity under *Seminole* is constitutional), *appeal pending,* No. 97–1246 (Fed. Cir. argued Feb. 2, 1998); *Genentech, Inc. v. Regents of the Univ. of Cal.,* 939 F.Supp. 639 (S.D.Ind.1996) (stating, in dicta, that the University could be held liable for patent infringement in federal court pursuant to section 5 of the Fourteenth Amendment), *aff'd on other grounds,* 1998 WL 216940 (Fed. Cir. May 4, 1998).

*In re Creative Goldsmiths* persuasively explained why section 5 of the Fourteenth Amendment cannot embrace congressionally-required waivers of state sovereign immunity in legislation authorized, as here, by Article I constitutional powers:

> Furthermore, reliance on § 5 of the Fourteenth Amendment as a post hoc justification for Congress's attempted abrogation in 11 U.S.C. § 106 would require us to ignore the result in *Seminole.* It is self-evident that the Fourteenth Amendment protects individuals from state deprivations of property without due process of law and thus, at some level of generality, could arguably apply to authorize bankruptcy court adjudications of property rights. *But see City of Boerne,* —— U.S. at —— – ——, 117 S.Ct. at 2165–66 ("The Enforcement Clause [of the Fourteenth Amendment] ... did not authorize Congress to pass 'general legislation upon the rights of the citizen, but corrective legisla-

tion....' The power to 'legislate generally upon' life, liberty, and property, as opposed to the 'power to provide modes of redress' against offensive state action, was 'repugnant' to the Constitution.") (citations omitted). If the Fourteenth Amendment is held to apply so broadly as to justify Congress' enactment of the Bankruptcy Code as a requirement of due process, then the same argument would justify every federal enforcement scheme as a requirement of due process under the Fourteenth Amendment. Clearly, the Indian gaming regulation at issue in *Seminole* would itself have been subject to this style of constitutionalization, for the statute provided for arbitration enforceable in federal court and governed property rights in the form of future gaming proceeds. Thus, *Seminole* itself is inconsistent with any reading that would extend Congressional power under § 5 of the Fourteenth Amendment to reincorporate express Article I powers.

*In re Creative Goldsmiths,* 119 F.3d at 1146–47.

■■■ The most potent argument in favor of upholding these statutory waiver provisions is a practical one: Without being able to sue the state in federal court, which has exclusive jurisdiction at least over copyright claims, *see* 28 U.S.C. § 1338, Chavez fears she has no effective remedy to protect her name and literary work. This fear is overblown; only retrospective money damages are unavailable to Chavez. First, it must be emphasized that the states are subject to federal law when they undertake activities regulated by it; after *Seminole,* the Eleventh Amendment only shields them from being sued in federal court. Second, the immunity conferred by the Eleventh Amendment is not limitless.[14] The *Ex Parte Young* doctrine permits suits for prospective injunctive relief, a valuable remedy against Copyright and Lanham Act violations and a remedy specifi-

cally contemplated by the clarification acts.[15] Third, as previously noted, suits on copyright and trademark contracts may be heard in state courts. Fourth, the federal government may sue states in federal court to enforce these laws. Finally, Congress may eliminate the perceived remedial gap by conferring concurrent jurisdiction on state courts to enforce these statutes.[16]

*Seminole* condemns Congress's effort to force unconsenting states into federal court as the price of doing business regulated by the Lanham and Copyright Acts. Consequently, 15 U.S.C. § 1122; 17 U.S.C. §§ 501, 511 are invalid to that extent, and Chavez's claims against the University of Houston, a state entity, must be dismissed. Because other remedies may be available to Chavez, as outlined in this opinion, we decline comment on such remedies, but rather than require dismissal, we REVERSE and REMAND for further proceedings consistent herewith.

---

14. *See Idaho v. Coeur d'Alene Tribe of Idaho,* —— U.S. ——, ——, 117 S.Ct. 2028, 2046, 138 L.Ed.2d 438 (1997) (O'Connor, J., concurring in part and concurring in judgment).

15. The doctrine of *Ex Parte Young* permits suits against state officials to enforce their compliance with any federally-created right. *See* Charles Alan Wright, *Law of Federal Courts* § 48 (1994).

16. *See* 3 Nimmer & Nimmer, *supra,* § 12.01[E][2], at 12–51. The potential loss of consistent adjudication might be lessened by allowing state court jurisdiction only over suits against state entities.