# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued November 22, 2005       Decided February 3, 2006
                              Reissued March 20, 2006

No. 05-7029

EMMA RODRIGUEZ, INDIVIDUALLY AND ON BEHALF OF OTHERS
SIMILARLY SITUATED,

APPELLEE

v.

PUERTO RICO FEDERAL AFFAIRS ADMINISTRATION, AND
INDIVIDUAL DEFENDANTS, ET AL.,
APPELLANTS

UNITED STATES OF AMERICA,
INTERVENOR

---

Appeal from the United States District Court
for the District of Columbia
(No. 03cv02246)

---

*Richard H. Pildes* argued the cause for appellants. On the briefs were *Lawrence I. Kiern* and *Gene C. Schaerr*. *Eric P. Gotting* entered an appearance.

*Dan Getman* argued the cause and filed the brief for appellee.

*Scott R. McIntosh*, Attorney, U.S. Department of Justice, argued the cause for intervenor. With him on the brief were *Peter D. Keisler*, Assistant Attorney General, *Gregory G. Katsas*, Deputy Assistant Attorney General, *Mark B. Stern*, Appellate Litigation Counsel, *Allen H. Feldman*, Associate Deputy Solicitor, U.S. Department of Labor, *Nathaniel I. Spiller*, Senior Counselor, and *Edward D. Sieger*, Senior Attorney. *Kenneth L. Wainstein*, U.S. Attorney, entered an appearance.

Before: TATEL and GARLAND, *Circuit Judges*, and EDWARDS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* TATEL.

TATEL, *Circuit Judge*: The issue presented arises from the intersection of the Puerto Rican Federal Relations Act (FRA), the Fair Labor Standards Act (FLSA), and principles of state sovereign immunity as set forth in two Supreme Court decisions: *Seminole Tribe of Florida v. Florida*, 517 U.S. 44 (1996), and *Alden v. Maine*, 527 U.S. 706 (1999). Holding that Article I of the United States Constitution gives Congress no authority to abrogate State sovereign immunity, *Seminole Tribe* and *Alden* effectively invalidated the FLSA's private right of action as applied against state agencies. In this case, we must decide whether, despite those two decisions, the FLSA's private right of action still applies against an agency of the Puerto Rican government. Because FRA section 734 provides that "[t]he statutory laws of the United States . . . shall have the same force and effect in Puerto Rico as in the United States," and because *Seminole Tribe* and *Alden* have left the FLSA's private right of action without "force and effect" against state agencies "in the United States," we hold that it does not.

3

## I.

Ending the Spanish American War, the 1899 Treaty of Paris ceded Puerto Rico to the United States as a territory entirely subject to Congress's regulatory will. Treaty of Paris, 30 Stat. 1754 (1899). According to the Treaty, "[t]he civil rights and political status of [Puerto Rico's] native inhabitants . . . shall be determined by the Congress." *Id.* at 1759. Moreover, Article IV of the Constitution authorizes Congress to "make all needful Rules and Regulations respecting the Territory . . . belonging to the United States." *See* U.S. Const. art. IV, § 3, cl. 2.

In a series of statutes beginning with the Foraker Act of 1900 and culminating with the enactment of Public Law 600 in 1950, Congress granted Puerto Rico ever increasing self-governing authority. *See* Foraker Act, ch. 191, 31 Stat. 77 (1900) (establishing Puerto Rico's first civilian government and vesting it with executive, legislative, and judicial powers); Jones Act of 1917, ch. 145, 39 Stat. 951 (1917) (providing Puerto Rico with a wider degree of local self-government, establishing a territorial bill of rights, and conferring American citizenship on Puerto Rican citizens); Elective Governor Act, Pub. L. No. 80-362, 61 Stat. 770 (1947) (investing the People of Puerto Rico with full control over the executive branch); Act of July 3, Pub. L. No. 81-600, 64 Stat. 319 (1950). "[A]dopted in the nature of a compact," Public Law 600 authorized the People of Puerto Rico to "organize a government pursuant to a constitution of their own adoption." Act of July 3, Pub. L. No. 81-600, 64 Stat. 319 (1950). Through popular referendum, the People of Puerto Rico approved Public Law 600's proposed allocation of power—supreme national power to the U.S. Congress and full local control to the Puerto Rican government—and then adopted a draft constitution. Congress approved the constitution, subject to three amendments: two unrelated to the claim before us and one requiring any future amendments to be "consistent with the resolution enacted by the Congress of the United States

approving this constitution, with the applicable provisions of the Constitution of the United States, with the Puerto Rican Federal Relations Act, and with Public Law 600, Eighty-first Congress, adopted in the nature of a compact." H.R.J. Res. 430, 82nd Cong. (1952). The Constitutional Convention of Puerto Rico accepted the amendments and then ratified the constitution "in the name of the people." *See id*. (outlining procedure for ratification); *Examining Bd. of Eng'rs, Architects & Surveyors v. Flores de Otero*, 426 U.S. 572, 594-95 (1976) (noting Puerto Rico's acceptance of amendments and ratification of the constitution).

Public Law 600 included the Puerto Rican Federal Relations Act, Act of July 3, Pub. L. No. 81-600, § 4, 64 Stat. 319 (1950), which codified all earlier statutory provisions regarding Puerto Rico that survived the Compact, including the following language first drafted for the Foraker Act: "[t]he statutory laws of the United States . . . shall have the same force and effect in Puerto Rico as in the United States." 48 U.S.C. § 734; *see* Jones Act of 1917, ch. 145, § 9, 39 Stat. 954 (1917) (containing section 734's language); Foraker Act, ch. 191 § 14, 31 Stat. 77 (1900) (containing language similar to section 734). Now found in FRA section 734 and central to the issue before us, that language has defined the application of federal law to Puerto Rico since 1900. *See, e.g.*, *P.R. Dep't of Consumer Affairs v. Isla Petroleum Corp.*, 485 U.S. 495, 499 (1988) (relying on section 734 to delineate the test for federal preemption of Puerto Rican law).

The Fair Labor Standards Act protects employees from "labor conditions [that are] detrimental to the maintenance of the minimum standard of living," 29 U.S.C. § 202(a). The Act prescribes minimum wage and overtime rates for employees either engaged in interstate commerce or working for employers engaged in interstate commerce. *Id*. §§ 206, 207. In order "[t]o

encourage employees to enforce their FLSA rights in court, and thus to further the public policies underlying the FLSA," *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 740 n.16 (1981), FLSA section 16(b) provides that "[a]n action to recover" for violations of the Act's minimum wage, overtime, and non-retaliation provisions "may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees." 29 U.S.C. § 216(b). Congress added the parenthetical reference to public agencies—defined to include both states and territories—to "overcome . . . the Supreme Court [decision] in *Employees of the Department of Public Health v. Missouri* (93 S. Ct. 1614, April 18, 1973) which stated that Congress had not explicitly provided  . . . [that] State and local employees could bring an action against their employer in a Federal court under section 16."  H.R. Rep. No. 93-913, at 45 (1974); *see also* 29 U.S.C. § 203(x) (defining "[p]ublic agency" to include "the government of a State or political subdivision thereof" and "any agency of . . . a State, or a political subdivision of a State"); *id*. § 203(c) (defining "State" to mean "any State of the United States or the District of Columbia or any Territory or possession of the United States").

In *Seminole Tribe*, however, the Supreme Court held that Article I gives Congress no authority to divest States of sovereign immunity from suit in federal court. *Seminole Tribe*, 517 U.S. at 72-73.  And three years later in *Alden*, which involved FLSA section 16(b), the Court extended *Seminole Tribe* to suits brought in state court.  *Alden*, 527 U.S. at 754. Taken together, *Seminole Tribe* and *Alden* mean that state employees no longer have any "court of competent jurisdiction," 29 U.S.C. § 216(b), in which to sue their employers for FLSA violations.

Appellee, Emma Rodriguez, filed suit in the United States District Court for the District of Columbia under FLSA section 16(b), alleging that the Puerto Rico Federal Affairs Administration (PRFAA), an executive agency of the Commonwealth of Puerto Rico, violated the FLSA by underpaying her and then retaliating against her after she complained. PRFAA moved to dismiss, arguing that *Seminole Tribe* and *Alden* entitled it to sovereign immunity from FLSA suits. The district court denied the motion, explaining that "[i]t is for Congress, and not this court, to decide, in light of *Seminole Tribe* and its progeny," whether Puerto Rico should be subject to suit under section 16(b) when States are not. *Rodriguez v. P.R. Fed. Affairs Admin.*, 338 F. Supp. 2d 125, 130 (D.D.C. 2004). PRFAA then moved under section 1292(b) to certify the sovereign immunity question for interlocutory appeal. *See* 28 U.S.C. § 1292(b) (allowing district courts to certify for interlocutory appeal any "controlling question of law as to which there is substantial ground for difference of opinion and [if] an immediate appeal . . . may materially advance the ultimate termination of the litigation"). The district court granted the motion, *Rodriguez v. P.R. Fed. Affairs Admin.*, No. 03-2246 (D.D.C. Dec. 13, 2004), and PRFAA timely filed a petition for permission to appeal. Fed. R. App. P. 5(a) (requiring that parties petition for permission to bring discretionary appeals "within the time specified by the statute or rule authorizing the appeal"). Because the district court properly certified the issue, and because both parties encourage us to hear this appeal, we grant PRFAA's petition. The federal government has intervened to defend the constitutionality of section 16(b) as applied to Puerto Rico.

## II.

PRFAA argues that section 734 enunciates a "default rule" under which courts must construe federal statutes to apply equally to Puerto Rico and the fifty States unless Congress

expressly provides otherwise. For additional support, PRFAA relies on the Compact, arguing that "no court should lightly infer that Congress has broken faith with its solemn undertaking in the Compact [to reaffirm and bolster Puerto Rico's sovereign immunity] in the absence of a clear statement of intent by the Congress." Appellants' Br. 7. Because *Seminole Tribe* and *Alden* bar section 16(b) suits against States, and because nothing in the FLSA reveals any congressional intent to treat Puerto Rico differently with respect to private section 16(b) suits, PRFAA argues that the district court should have dismissed Rodriguez's complaint. We agree.

FRA section 734 provides that "[t]he statutory laws of the United States . . . shall have the same force and effect in Puerto Rico as in the United States." 48 U.S.C. § 734. Here, we consider how to apply this mandate to FLSA section 16(b), which allows employees to maintain private actions against any employer, "including a public agency." 29 U.S.C. § 216(b). Section 3(x) defines "public agency" to include the government of a "State," 29 U.S.C. § 203(x), and section 3(c) defines a "State" to include "any State" or "any Territory," 29 U.S.C. § 203(c). If, as Rodriguez argues, section 16(b) continues to authorize such actions against Puerto Rico, then the provision would have a different "force and effect in Puerto Rico [than it does] in the United States": in Puerto Rico a "State"—as defined by the statute—can be sued, while in the United States, after *Seminole Tribe* and *Alden*, a "State" cannot. The only way to give section 16(b) "the same force and effect in Puerto Rico as in the United States" is to hold, as PRFAA urges, that Puerto Rico likewise enjoys immunity from private FLSA enforcement suits.

The district court is certainly correct that "[i]t is for Congress, and not this court," to decide what to do with section 16(b) given *Seminole Tribe* and *Alden*. *Rodriguez*, 338 F. Supp.

2d at 130. Indeed, as Rodriguez points out, *Seminole Tribe* itself says that courts are not "free to rewrite the statutory scheme in order to approximate what we think Congress might have wanted had it known that [the provision] was beyond its authority." *Seminole Tribe*, 517 U.S. at 76. Here, however, we need not "rewrite the statutory scheme" to reflect what "we think Congress might have wanted had it known" that section 16(b)'s private right of action could no longer be applied to States. FRA section 734, though originally enacted almost a century before *Seminole Tribe* and *Alden*, tells us exactly how to apply section 16(b) to Puerto Rico now that, by virtue of those two decisions, its private right of action has become inapplicable to States. Specifically, section 16(b)'s private right of action must have the same "force and effect" against "State" agencies in Puerto Rico, namely no force or effect at all. *See* 29 U.S.C. § 203(c) (defining "State" to include territories for FLSA purposes).

The First Circuit, the court most expert on Puerto Rico's status, agrees. In *Jusino Mercado*, also a section 16(b) suit against Puerto Rico, the First Circuit concluded:

> [G]iven the language of the FLSA, the context in which Congress amended it to reach public agencies, and the guidance provided by the Federal Relations Act, reading the law to intrude more profoundly on Puerto Rico's sovereignty than on that of the states would contradict what we discern to be Congress's manifest intent. To harmonize our reading of the statute with this intent and to maintain the parallelism that Congress sought to achieve, we construe the FLSA as failing to overcome Puerto Rico's immunity.

*Jusino Mercado v. Puerto Rico*, 214 F.3d 34, 44 (1st Cir. 2000).

Rodriguez's arguments to the contrary are unpersuasive. First, twisting section 16(b)'s plain language, she argues that "[a]t most, the [FRA] holds that the FLSA *has* applicability in Puerto Rico [because the] statute [is] applicable in the states." Appellee's Br. 21. But, she continues, section 734 does not accord to Puerto Rico the same defense to individual claims in federal court that the U.S. Constitution provides States. Although it is true that the FLSA *applies* both in the United States and in Puerto Rico, Congress commanded that section 16(b) apply to Puerto Rico according to its *force* and *effect* in the United States. After *Seminole Tribe* and *Alden,* section 16(b) no longer has the force and effect Congress purported to give it: States now enjoy immunity from private rights of action. Section 734's "same force and effect" command thus requires that we accord the same immunity to Puerto Rico.

Pointing out that Congress intended the FLSA to apply broadly to "all employees within the scope of the Act," *United States v. Rosenwasser,* 323 U.S. 360, 363 (1945), Rodriguez next argues that "under the FLSA's rules of interpretation[], there can be no implied exemptions to the FLSA," Appellee's Br. 22. But Rodriguez provides no citation to any FLSA "rules of interpretation," and we are unaware of any such rules. More important, our ruling today creates no "implied exemption" to the FLSA, but merely follows Congress's express direction to give "[t]he laws of the United States . . . the same force and effect in Puerto Rico as in the United States." 48 U.S.C. § 734.

Next, Rodriguez urges us to ignore section 734 altogether since "an implicit 'default rule' cannot be said to override explicit language in a statute that clearly expresses a contrary position. Because Congress made Puerto Rico liable under the FLSA specifically, the default rule cannot trump Congress's specific instructions." Appellee's Br. 22. But neither section 16(b) nor the definitional terms it incorporates "specifically"

refer to Puerto Rico. FLSA section 3(c) broadly defines the term "State"—a category of "covered employers"—to include "any State of the United States or the District of Columbia or any *Territory*." 29 U.S.C. § 203(c) (emphasis added). By comparison, section 734 applies expressly to Puerto Rico. Accordingly, because the canons of statutory construction require that the specific govern the general, instead of ignoring section 734, we must apply section 16(b) (the more general of the two provisions) as directed by section 734, giving it the same "force and effect in Puerto Rico as in the United States."

Last, assuming for argument's sake that the "default rule" applies, Rodriguez argues that it does "not bar this suit, because there is a rational basis for treating Puerto Rico differently from the states—namely that the states have constitutional sovereign immunity . . . and Puerto Rico does not." Appellee's Br. 22. The fact that Congress may have had a rational basis for treating Puerto Rico differently from States, however, is irrelevant given that it expressly chose not to do so for purposes of section 16(b) private enforcement actions. 29 U.S.C. § 216(b) (providing "[a]n action to recover" for FLSA violations "may be maintained against any employer (including a public agency)"; *id*. § 203(x) (defining "[p]ublic agency" to include "any agency of . . . a State"); *id*. § 203(c) (defining "State" to include "any State" and "any Territory"). Because of this, and because of section 734's "same force and effect" command, we have no basis for treating Puerto Rico differently from the fifty States.

We reverse the district court's decision and remand with instructions to dismiss the complaint.

*So ordered*.